633 So.2d 755 (1994)
Alfred WHITE Sr., et al.
v.
TOURO INFIRMARY.
No. 93-CA-1617.
Court of Appeal of Louisiana, Fourth Circuit.
February 11, 1994.
Rehearing Denied April 15, 1994.
*757 Joseph W. Thomas, New Orleans, for plaintiffs-appellees Alfred White Sr., et al.
Harold A. Thomas, Thomas, Hayes, Beahm & Buckley, New Orleans, for defendant-appellant Touro Infirmary.
John Neely Kennedy, Charles P. Blanchard, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for intervenors-appellants Louisiana Patient's Compensation Fund Oversight Bd. and Louisiana Patient's Compensation Fund.
Before SCHOTT, C.J., and KLEES and LOBRANO, JJ.
KLEES, Judge.
Defendant Touro Infirmary ["Touro"] appeals from a judgment in favor of plaintiffs, Alfred White, Sr., Alfred White, Jr., and Dinela White, awarding them approximately $300,000.00 in damages for the wrongful death of Enid White. Enid White was the wife of Alfred White, Sr., and the mother of Alfred White, Jr., and Dinela White. An appeal has also been filed by intervenors, the Louisiana Patient's Compensation Fund and the Louisiana Patient's Compensation Fund Oversight Board [collectively "Patient's Compensation Fund"]. After reviewing the record, we affirm.
Enid White, a fifty-four year old teacher, entered Touro on November 16, 1988 for surgery to remove an ovarian cyst, which was scheduled for the next day. During surgery, Mrs. White's attending physician, Dr. Jack Kushner, discovered a tumor in her colon which, after consulting with Dr. Alan Levine and obtaining the consent of Mrs. White's husband, he also removed. The surgery was successfully completed and, according to hospital records, Mrs. White had a largely uneventful, routine post-operative recuperation period. On November 23, 1988, Mrs. White was discharged from Touro. A few minutes after arriving home, Mrs. White collapsed, and despite all efforts, she died a few hours later. Her death was caused by a massive saddle pulmonary embolism which occluded both main pulmonary arteries, triggering pulmonary arrest and heart failure.
Following her death, plaintiffs submitted a claim of negligence against Touro to a medical review panel, which found that Touro's conduct did not fall below the applicable standard of care. Plaintiffs then filed this lawsuit contending that Touro's negligence had denied Mrs. White a chance of survival. The case was tried before a jury for four days in January of 1993. The jury found in favor of plaintiffs, and awarded damages. Defendant filed a motion for judgment notwithstanding the verdict, and alternatively, for a new trial. The motions were denied, and this appeal followed. Because the amount of damages awarded exceeded Touro's statutory maximum liability of $100,000 under R.S. 40:1299.42(B)(2), we granted leave to the Patient's Compensation Fund to appeal as an intervenor.
On appeal, defendant argues that the jury verdict is manifestly erroneous because the evidence does not support the conclusion that Touro's negligence deprived Mrs. White of a chance of survival. Other errors asserted by Touro are the trial judge's allegedly improper framing of a jury interrogatory, the trial court's failure to limit the testimony of plaintiffs' expert Dr. Young, the trial court's alleged violation of the rule of Edmondson v. Leesville Concrete Company, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), during jury selection, and the trial court's giving of an impermissible "dynamite" charge to the jury during their deliberations. Alternatively, Touro argues that the judgment should be amended to reflect its limited liability. The *758 appeal of the Patient's Compensation Fund is limited to its claim that the damages awarded by the jury are excessive.
With regard to the negligence of Touro, there is conflicting evidence in the record. Mrs. White's two treating physicians, Dr. Kushner and Dr. Levine, testified that she had an uneventful post-operative course, the type of recovery they would like to see every patient have. They stated that they examined Mrs. White every day after the surgery and that they were satisfied with the nursing care and with Mrs. White's progress. Dr. Levine, who discharged Mrs. White on November 23rd, had no doubt that she was ready to be discharged. The hospital charts also reflect a benign post-operative period, except for one notation on the day after surgery that Mrs. White was "anxious about getting up while in so much pain." The charts contain no mention of any respiratory difficulties or other problems. Defendant also presented the expert testimony of the three physicians who had served on the medical review panel. They opined that there were no objective findings which would have indicated the formation or presence of a pulmonary embolism, and that therefore Touro was not negligent.
In contrast to this evidence, plaintiffs presented the testimony of Mrs. White's family members and friends who were with her after the surgery. They indicated that Mrs. White was almost never left alone; she constantly had a family member or friend attending to her needs while she was in the hospital. Jacinta White, Enid White's daughter-in-law, was with her mother-in-law on the day after her surgery. She testified that when Enid White was helped up out of bed for the first time, she had difficulty breathing, collapsed and lost consciousness for ten to fifteen minutes until one of the nurses finally revived her by placing something under her nose. When she had fully revived, Enid White told Jacinta that her mouth felt numb and her speech was "blurry." Jacinta White gave detailed descriptions of the nurses in attendance during this incident, and stated that after her mother-in-law was given intravenous medication and had fallen asleep, Jacinta questioned the nurses at the nurses' station about the incident, but was told not to worry. There is no mention of this incident in the patient's chart or other hospital records.
Alfred White, Sr., Enid's husband, testified that his wife had recurring breathing difficulties, including coughing and struggling to catch her breath, which he reported to the nurses in attendance. Enid's daughter Dinela White testified that when she visited her mother in the hospital, Enid was gasping for breath, her mouth was twitching and her face was numb. Swanson LaBeaud, Enid's sister-in-law who visited her every day, also testified that Enid had difficulty breathing. Ms. LaBeaud confirmed that Enid told her that she had passed out in the presence of some of the nurses, and that none of the nurses would answer Enid's questions about her loss of consciousness, her slurred speech, or the numbness in her face. Again, none of the family members' complaints or Enid's complaints are noted in the hospital records, and none of the nurses testified at trial.
Plaintiffs contended at trial that the nurses' failure to properly monitor and record these complaints constituted negligence on the part of the hospital. Plaintiffs also presented the testimony of an expert witness, Dr. Ronald Young, who concluded that if these symptoms had not been overlooked, some type of a workup could have been performed which may have revealed the presence of smaller emboli, which sometimes proceed a large one, and may have prompted the doctors to take steps which could have prevented the massive embolism that caused Enid White's death. Based on this statement of Dr. Young, the trial judge denied defendant's motion for directed verdict and sent the case to the jury.
On appeal, defendant argues that the absence of any finding of smaller pulmonary emboli on the autopsy report means that no matter what type of workup was done on Enid White, nothing would have been discovered which would have indicated the formation of either small or large pulmonary embolisms. Defendant also relies on the testimony of its three expert physicians, who stated that the breathing difficulties and other symptoms reported by the White family *759 members were not necessarily related to the presence of a pulmonary embolism, but rather were normal post-operative discomforts resulting from Mrs. White's surgery.
In a medical malpractice action, the plaintiff carries a two-fold burden of proof. First, the plaintiff must establish by a preponderance of the evidence that the treatment fell below the ordinary standard of care, and then must establish a causal relationship between the alleged negligent treatment and the injury sustained. Resolutions of each of these inquiries are determinations of fact which should not be reversed on appeal absent manifest error. Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1276 (La.1991) (Citations omitted). Thus, in a wrongful death action, once a breach of duty constituting medical malpractice has been established, "the question of whether the malpractice contributed to the death, i.e., lessened the chance of survival, is a question of fact for the jury." Hastings v. Baton Rouge General Hospital, 498 So.2d 713, 720 (La.1986). In the instant case, the jury found that Touro was negligent and that its negligence lessened Enid White's chance of survival.
Defendant contends strenuously that this conclusion is manifestly erroneous, citing language from Smith v. State Through Dept. of Health & Human Resources, 523 So.2d 815 (La.1988), in which the Court stated:
There is simply no evidence in the record as to whether treatment undertaken earlier would have provided the decedent a chance of survival that she otherwise would not have had. Plaintiff's expert said that it was "possible" that measures could have been undertaken which would have increased the patient's chances of survival, but he did not specify what those measures were and he did not assess in any detail what the quantitative chances of survival would have been.

Id. at 821 (Emphasis added). Defendant argues that here, as in the Smith case, the testimony of plaintiffs' expert Dr. Young is not specific enough to establish that Touro's conduct lessened Mrs. White's chance of survival. However, the Smith Court went on to hold:
Causation is a question of fact. Miles v. Dolese Concrete Co., 518 So.2d 999, (La. 1988); Hastings, 498 So.2d at 720. Here the evidence on causation was conflicting at best. The court of appeal was of the view that the trial court's finding that the plaintiffs failed to establish causation was not clearly wrong or manifestly erroneous. And our independent review of the record convinces us that the plaintiffs did indeed fail to prove by a preponderance of the evidence that the defendants' negligence denied the decedent a chance of survival.
Id. at 822.
Ultimately, the Smith Court affirmed the verdict of the trier of fact. An appellate court is not free to substitute its own judgment for that of jury. Rather, our standard of review is limited to determining whether there was evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a factual basis for the fact finder's conclusion. Riley v. Winn-Dixie Louisiana Inc., 489 So.2d 931, 935 (La. App. 3d Cir.1986). In this case, we find that such a reasonable basis exists. The negligence of the hospital is primarily an issue of credibility. The jury obviously believed the family members' testimony about certain complaints and events which were never recorded in the patient's chart. As for causation, the evidence showed that the development of blood clots in the pelvic region, which clots may eventually travel to the lungs, is a known complication of the type of surgery Enid White had. Moreover, while the autopsy did not mention the presence of any smaller emboli in the pulmonary cavity, it did note the presence of "venus thrombi" or blood clots in the pelvic region. Finally, the family members testified that Mrs. White was experiencing respiratory difficulties, which, according to medical testimony, may be a sign that emboli are present. Considering this evidence, we cannot say that there was manifest error in the jury's conclusion.
Defendant next argues that the jury interrogatory asking whether the fault of the hospital had deprived Mrs. White of a chance of survival was improper. Defendant argues that under Hastings, supra, and *760 Smith, supra, the jury should have also been asked whether plaintiffs proved that there was a reasonable probability that the omitted treatment or procedure would have been lifesaving. We disagree. In Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1278 (La.1991), the Supreme Court, citing Smith and Hastings, reiterated that to establish causation in a situation where the patient dies, the plaintiff need only prove that the defendant's malpractice resulted in the patient's loss of a chance of survival, and that the plaintiff need not shoulder the "unreasonable burden" of proving that the patient would have survived if properly treated. In Martin, the Supreme Court reversed the court of appeal's finding that the plaintiff had failed to prove causation and affirmed the trial court's conclusion, reasoning that "[t]he district judge, sitting as fact finder, was best able to assess the credibility of witnesses who gave conflicting testimony as to the cause of death." Id. at 1278. Therefore, we conclude that the jury interrogatory was a correct expression of the law.
Defendant's argument that the trial court erred by allowing Dr. Young to testify as to the possible presence of small emboli is also without merit. As we noted above, there was expert testimony confirming that the formation of blood clots in the pelvis and their movement to the lungs is a known complication of this type of surgery. Moreover, the autopsy did note the presence of blood clots in the pelvic region. Under these circumstances, it was not error for the court to allow the testimony.
Defendant's next argument is that it deserves a new trial because the trial court erred by allowing plaintiffs' counsel to use his peremptory challenges illegally to discriminate against Caucasian jurors in violation of Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). This argument has no merit. Despite defendant's assertions of discrimination, the jury was racially mixed. Moreover, the remedy for an Edmonson violation is not a new trial. In Holmes v. Great Atlantic & Pacific Tea Co., 622 So.2d 748, 760 (La.App. 4th Cir.1993), we held that the proper procedure in this situation is for the aggrieved party to take a writ to the appellate court so that a hearing may be ordered before the trial proceeds. In the instant case, the record reflects that defendant made his objection in the trial court and was specifically given the opportunity to take a writ, but declined to do so. Under these circumstances, we will not now entertain defendant's complaint about jury selection.
Finally, defendant argues that the trial court erred in giving an "Allen" or "Dynamite" charge to the jury, which is contrary to the holding of State v. Nicholson, 315 So.2d 639 (La.1975). An "Allen" charge is one calculated to dynamite a hopelessly deadlocked jury into unanimity. The record does not support defendant's contention that an impermissible "Allen" charge was given in this case. The jury returned after its initial deliberations, and the foreman indicated to the judge that the jury was hung up on several issues and requested some clarifications. The trial judge answered the questions and told the jury to decide the case based on the evidence before it. The jury went back into seclusion, and returned with a 10 to 2 verdict. There is no evidence that the jury in this case was hopelessly deadlocked, only that it had some questions concerning the evidence and its duty in regard to the evidence. In this situation, the trial judge is permitted to, after clarifying the issues, simply urge the jury to reach a verdict without using coercive language. See Trans-Global Alloy v. First National Bank, 583 So.2d 443, 449 (La.1991). The trial judge did not abuse his discretion by doing so in the instant case.
Lastly, we address intervenor's contention that the damages awarded by the trial court are excessive. Contrary to intervenor's assertion, we have found no consequential errors on the part of the trial court which would necessitate an independent review of quantum by us. Therefore, the damage awards will be reviewed according to the standard set forth in Reck v. Stevens, 373 So.2d 498, 501 (La.1979), under which the initial inquiry is whether the trial court's award for the particular injuries and their effects upon this particular injured person is *761 a clear abuse of the trier of fact's "much discretion." In making this initial determination of excessiveness or insufficiency, an examination of prior awards may serve as an aid only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for truly similar injuries. Thomas v. State Farm Ins. Co., 499 So.2d 562, 564 (La.App. 2d Cir.1986), writ denied, 501 So.2d 213, 215 (La.1987) (quoting Reck v. Stevens, supra.).
In the instant case, the trial court awarded the following general damages: (1) $74,000 for pain and suffering of Enid White; (2) $112,200 to Enid's husband, Alfred White, Sr.; (3) $70,000 to Enid's adult daughter Dinela White, who lived with her parents; and (4) $45,000 to Enid's adult son, Alfred White, Jr. Regarding the awards to the relatives, there is ample testimony in the record to establish the fact that Enid White was exceptionally close to each of these members of her family. Moreover, the amounts awarded are not at all disproportionate to the mass of past awards for the loss of a wife and mother. See Thomas v. State Farm Ins. Co., 499 So.2d 562, 566 (La.App. 2d Cir.1986) (Awards for the wrongful death of a spouse are usually $100,000 to $150,000; for the wrongful death of a parent, they range from $25,000 to $150,000 for minor children, and from $20,000 to $75,000 for major children). We therefore do not find that the trier of fact abused its discretion in setting these amounts.
Intervenor also contends that the award of $74,000 for Enid White's pain and suffering is excessive because she lived only two hours after suffering the embolism; intervenor suggests that the maximum permissible award is $50,000. However, we do find testimony in the record confirming that although Enid White did not live very long, she was conscious and she did suffer a great deal during part of that time. The testimony of Mrs. White's sister-in-law Swanson LeBeaud established that after Mrs. White collapsed, she was complaining about her face being "stiff" and begging those with her to hold her up under her arms so that she could try to breathe, constantly changing positions, and even asking to be lain across a T.V. table so she could get some relief. She was groaning and asking why the ambulance was taking so long to get there. In view of the evidence, we cannot say the amount awarded is an abuse of discretion.
Touro has requested that we amend the lower court's judgment to reflect its limited liability under the Medical Malpractice Act. As the Patient's Compensation Fund has intervened in his lawsuit, thereby admitting its statutory liability for any amount of damages exceeding $100,000, we will amend the judgment to state that Touro is liable to plaintiffs for $100,000.00 plus interest thereon accruing after April 1, 1991, and the Patient's Compensation Fund is liable to plaintiffs for the remainder of the damages awarded by the trial court, plus interest, in accordance with La.R.S. 40:1299.42(B)(2). As so amended, the judgment is affirmed.
AFFIRMED.