643 So.2d 273 (1994)
Margaret Rachel EVANS, et vir, Plaintiff-Appellant,
v.
G. Michael HAYNIE, Defendant-Appellee.
No. 26135-CA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1994.
*274 A. Richard Snell, Steven G. McKenzie, Bossier City, for appellant.
Cook, Yancey, King & Galloway by Samuel W. Caverlee, Cynthia C. Anderson, Shreveport, for appellee.
Before LINDSAY, HIGHTOWER and BROWN, JJ.
LINDSAY, Judge.
This appeal arises from a medical malpractice case involving the administration of an injection. A jury ruled in favor of Margaret Rachel Evans and her husband, Bob Evans, and against Dr. G. Michael Haynie, Mrs. Evans' doctor. The jury awarded Mrs. Evans $20,000 in general damages, but declined to award Mr. Evans any damages for his *275 alleged loss of consortium. Contending that the award of damages was inadequate, the plaintiffs appealed. The defendant answered the appeal on the issue of negligence. For the reasons assigned below, we affirm the judgment of the trial court.

FACTS
Following a serious automobile accident in 1970, Mrs. Evans began suffering from a persistent discomfort in the right mid-shoulder area of her back. This condition required her to seek periodic cortisone injections at the trigger point area of the right trapezius.[1] Following the retirement of her regular doctor, Mrs. Evans became a patient of Dr. Haynie, an orthopedic surgeon. She first saw him on October 31, 1986, at which time she received an injection of Celestone at the same trigger point.
On her third appointment with Dr. Haynie, on December 2, 1986, he gave Mrs. Evans another trigger point injection. However, Dr. Haynie penetrated too deeply, causing the needle to pass through the muscle into Mrs. Evans' chest cavity, piercing her right lung. An x-ray taken shortly after the procedure showed a pneumothorax, or air between the lung and chest cavity, which indicated a collapsed lung.
Mrs. Evans was admitted to Willis-Knighton Medical Center where Dr. Forrest Wright, a general surgeon, inserted a chest tube into her chest cavity to inflate the lung. However, the next day it was discovered that the tube was no longer properly in place and that the pneumothorax had redeveloped. Due to the problems with the chest tube, Mrs. Evans refused to accept further treatment from Dr. Wright or to have another chest tube inserted. Despite the risk of further collapse of her lung, she insisted upon leaving the hospital. After being informed of the risks, Mrs. Evans was discharged on December 6, 1986 with a small pneumothorax.
On December 8, 1986, Mrs. Evans was readmitted to WKMC with her right lung in a state of almost total collapse. A chest tube was again implanted surgically by Dr. William Norwood, and the lung reinflated. A few days later, the tube was clamped to see if the leak was still present. A partial collapse developed overnight, and the tube was unclamped and a vacuum pump was used to suction the air from between the lung and the chest cavity to reinflate the lung. Thereafter, the chest tube was clamped again, and Mrs. Evans remained in the hospital under observation. Following the removal of the chest tube on December 16, a small pneumothorax developed. Dr. Norwood discharged Mrs. Evans on December 18, 1986, with strict instructions to seek immediate medical attention if she became short of breath. However, the lung did not collapse again, and an x-ray taken at Dr. Norwood's office on December 22, 1986, showed no sign of pneumothorax. Another x-ray on January 6, 1987, was also normal.
During Mrs. Evans' second hospitalization, Dr. Haynie also treated her for a vaginal yeast infection. However, Mrs. Evans later claimed that this was actually a staph infection of the pubic or labial area which she attributed solely to her hospitalization at WKMC.
A medical review panel concluded that there was no negligence on the part of either Dr. Haynie or Willis-Knighton Medical Center. Thereafter, suit was filed against Dr. Haynie by Mrs. Evans and her husband.[2] At the conclusion of a jury trial, the jury found that Dr. Haynie had failed to exercise the required standard of care and that the plaintiffs had suffered injuries as a result of his negligence. (The interrogatory to the jury inquired as to whether "plaintiffs" had suffered injuries, without distinguishing between Mr. and Mrs. Evans.) General damages of $20,000 were awarded to Mrs. Evans, but no award for loss of consortium was made to Mr. Evans. Subsequently, the trial *276 court denied the plaintiffs' motion for JNOV and/or additur.
The plaintiffs appeal, assigning as error the following: (1) the jury erred in awarding only $20,000 in damages to the plaintiff; and (2) the jury erred in failing to make an award for loss of consortium to Mr. Evans. Dr. Haynie answered the appeal, seeking a reversal of the finding of negligence.

NEGLIGENCE
Dr. Haynie asserts that pneumothorax, or collapsed lung, is a known complication of trigger point injection which can occur even with the exercise of the best of care.

Law
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, supra.
In a medical malpractice action, the plaintiff carries a two-fold burden of proof. First, the plaintiff must establish by a preponderance of the evidence that the treatment fell below the ordinary standard of care, and then must establish a causal relationship between the alleged negligent treatment and the injury sustained. Resolutions of each of these inquiries are determinations of fact which should not be reversed on appeal absent manifest error. White v. Touro Infirmary, 633 So.2d 755 (La.App. 4 Cir. 1994).
Appellate review of the trial court's findings in a medical malpractice action is limited. The standard of knowledge, skill and care for physicians is best determined from the testimony of other experts in the field. When the medical experts express different views, judgments and opinions on whether the standard was met in any given case, the reviewing court will give great deference to a trier of fact's evaluations. Beckham v. St. Paul Fire and Marine Insurance Company, 614 So.2d 760 (La.App. 2 Cir. 1993).

Discussion
The testimony of two members of the medical review panel, Dr. Carl Goodman and Dr. J. Lee Etheredge, was presented at trial. According to Dr. Goodman, the consensus of the panel was that the "law of averages" simply "caught up" with Dr. Haynie because in a certain percentage of injections the patient's lung will be punctured. However, he was unaware of any statistics concerning lung punctures during injection. Furthermore, Dr. Goodman testified that in his 21 years of practice he had never punctured anyone's lung. Nor was he aware of any similar situations involving the type of injection administered in the present case. Dr. Goodman also noted that he always uses the smallest needle possible.
Dr. Etheredge described the administration of injections as a learned, physical skill which also involved the use of the physician's judgment in selecting the medication, the size of the needle, the injection site, and the depth of the injection. He testified that he had given "thousands" of trigger point injections and that he had punctured the patient's lung in two cases.
Dr. Charles E. Workman testified on behalf of the plaintiffs as an expert in orthopedics. In his opinion, Dr. Haynie was guilty of medical malpractice because he used a needle that was too long. However, Dr. Workman admitted that he had never personally administered any trigger point injections.
In his own testimony, Dr. Haynie acknowledged making an error in judgment in administering the injection too deeply. He also testified that when he initially injected the needle in this case, it didn't "feel right" to him. He aspirated, or drew back on the plunger, to see if any air came back into the syringe. He did not detect any air and continued with the injection, reasoning that, *277 if he had already hit the lung, the harm was already done. He did not reposition the needle because the aspirations felt right to him.
As the trier of fact, the jury's conclusions are afforded great deference. Based upon our review of the evidence, we conclude that the jury, which had the benefit of observing all of the witnesses, could have reasonably concluded that Dr. Haynie's conduct was negligent. In particular, the jury was undoubtedly persuaded by the testimony of erroneous medical judgment given by Dr. Workman and by Dr. Haynie himself. Therefore, we find no manifest error.
This assignment of error is without merit.

ADEQUACY OF DAMAGES
The plaintiffs contend that the damage award rendered in favor of Mrs. Evans was inadequate, particularly in view of the excruciating pain she suffered as a result of the procedures employed to reinflate her collapsed lung and her fear that she was dying. They claim that Mrs. Evans is still suffering physical and emotional after-effects, including painful adhesions under her right arm related to the placement of the chest tubes. Additionally, Mrs. Evans contends that she developed a staph infection in the pubic or labial area which she attributed to her hospitalizations at WKMC.
The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Youn, supra.
Mrs. Evans was hospitalized twice, the first time for only four days. On December 6, 1986, she was discharged at her own insistence and upon her denial of any discomfort. When she kept her follow-up appointment on December 8, 1986, it was discovered that the pneumothorax was significantly worse and she was rehospitalized that day. Another chest tube was then inserted. When she was discharged on December 18, 1986, her condition was essentially resolved.
Dr. Norwood had several follow-up appointments with Mrs. Evans, the last one on April 6, 1987. At that time, he instructed her to return to see him as needed. She did not return again until January 1993, almost six years later and less than one month before trial. At that appointment she complained of discomfort in her right arm. With medication, this condition resolved within a week, and Dr. Norwood suggested that she take Extra-Strength Tylenol.
While the sum of $20,000 might be considered on the low end of the scale, it is not abusively low. Mrs. Evans' condition, although painful and stressful, essentially resolved within one month of the initial incident. We note that the second hospitalization apparently resulted, to some degree, from Mrs. Evans' demand to be prematurely released from the hospital on December 6, 1986. As to her claims concerning the adhesions, Dr. Norwood testified that they are usually not symptomatic and that when they are symptomatic, more likely than not, they do not cause much pain.
This assignment of error has no merit.

LOSS OF CONSORTIUM
The plaintiffs also argue that the jury erred in not making any award in favor of Mr. Evans for loss of consortium. He seeks an award of $35,000.
Loss of consortium is broken down into seven types of loss: (1) loss of love and affection; (2) loss of society and companionship; (3) impairment of sexual relations; (4) loss of performance of material services; (5) loss of financial support; (6) loss of aid and assistance; and (7) loss of fidelity. Finley v. Bass, 478 So.2d 608 (La.App.2d Cir.1985).
As noted previously, the jury obviously concluded that Mrs. Evans' punctured lung resolved satisfactorily within about one *278 month of the injection. Therefore, an award of loss of consortium to Mr. Evans would be justified only if the staph infection (which interfered with their sexual relations) was somehow attributable to Mrs. Evans' hospitalization for the pneumothorax. The testimony of Dr. Darryl Driggs, the only doctor to treat this infection, demonstrated that the staph infection was not related to her hospitalization. He characterized Mrs. Evans' theory that she contracted the infection at WKMC as "unlikely."
Additionally, the plaintiffs contend that, since the jury responded affirmatively to the interrogatory inquiring whether "plaintiffs" had suffered injuries (without distinguishing between Mr. and Mrs. Evans), it was legal error for the jury not to award some amount of damages in favor Mr. Evans. However, it is clear that when the jury awarded $20,000 to Mrs. Evans and "0" to her husband, it was simply manifesting its complete rejection of Mr. Evans' claims.[3]
We find no abuse of discretion in the jury's rejection of Mr. Evans' claim for loss of consortium.
This assignment of error is meritless.

CONCLUSION
The judgment of the trial court is affirmed. Costs are assessed against the parties equally.
AFFIRMED.
BROWN, J., concurs/dissents.
BROWN, Judge, concurring/dissenting.
Under the circumstances, I believe that the amount awarded was inadequate. Additionally, Mr. Evans was entitled to an award for loss of consortium. Such an award is justified even if the staph infection was not attributable to the hospitalization.
NOTES
[1] A trigger point, or trigger zone, is defined as a point or region of the body, the touching of which initiates an attack of pain elsewhere. 4 Schmidt's Dictionary of Medicine and Word Finder 212 (Supp. February 1994).
[2] Originally, Willis-Knighton was also named as a defendant, but it settled with the plaintiffs before trial.
[3] In relevant portion, the jury interrogatories and the jury's responses were as follows:

(2) "Do you find by a preponderance of the evidence that plaintiffs suffered injuries as a result of Dr. Haynie's negligence?" ["YES" marked]
(3) Total amount of damages sustained by Mrs. Evans: $20,000;
Total amount of damages sustained by Mr. Evans: -0-