714 So.2d 132 (1998)
Lori Ann SIMS, Individually and on Behalf of the minor child, Robert Spencer Heard, Plaintiff-Appellant,
v.
STATE FARM AUTOMOBILE INSURANCE COMPANY, et al., Defendant-Appellee.
No. 30602-CA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1998.
*134 Tommy J. Johnson, Shreveport, for Plaintiff-Appellant.
Graydon Kitchens, III, Minden, for Defendant-Appellee.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
WILLIAMS, Judge.
The plaintiff, Lori Ann Sims, appeals the trial court's judgment based on the jury's verdict assessing her with 80% fault in the causation of an automobile accident, and 20% fault to the defendants, James Kirkpatrick, Roberson Trucking Company and State Farm Mutual Automobile Insurance Company ("State Farm"). The jury awarded $20,000 to plaintiff for general damages and $6,900 in medical expenses. For the following reasons, we amend and affirm as amended.

FACTS
On March 19, 1993, shortly before 8:00 p.m., the defendant, James Kirkpatrick, was operating a tractor-trailer truck, owned by Roberson Trucking Company, in a southerly direction on U.S. Highway 79 in Claiborne Parish, Louisiana. The plaintiff was also driving south in a vehicle on the same highway, with a speed limit of 55 miles per hour. Her passenger was Mandy Kilgore. The conditions were dark with a misting rain.
In preparation to make a right turn into the driveway of his residence, defendant put on his right directional light and drove over the center line of the road into the northbound lane to make sufficient space for the turn. As defendant was slowly turning into his driveway, plaintiff drove over the crest of a highway incline and saw the tanker trailer across the lane of travel. Her vehicle struck the side of the tanker and lodged beneath the truck. Kilgore was able to get out of the vehicle, but the plaintiff was trapped inside.
Plaintiff was extracted from her vehicle by the jaws of life and transported by helicopter to Willis Knighton Hospital, where she was treated for a concussion, lacerations on her right ring finger and pain in her left ear, shoulder and ankle. State Police Trooper Ted Raley investigated the accident scene. Officer Raley used a flashlight and a flash camera to take photographs of the vehicles. He reported that the truck was perpendicular to the roadway with its rear tandem wheels in the northbound lane.
Subsequently, plaintiff filed a petition for damages against the defendants, James Kirkpatrick, Roberson Trucking and its insurer, State Farm. Following a trial, the jury assessed 80% of the fault in causing the accident to plaintiff and 20% fault to defendants. The jury awarded $20,000 to plaintiff for general damages and $6,900 in medical expenses and denied the claim of plaintiff's child for loss of consortium. Plaintiff appeals.

DISCUSSION
In two assignments of error, the plaintiff argues the trial court erred in assessing her with 80% of the fault in causing the accident. Plaintiff contends the truck driver improperly blocked the road and created a hazard which the plaintiff could not avoid.
Any person operating a motor vehicle on the public roads shall drive in a careful and prudent manner, so as not to endanger the life, limb or property of another. Failure to drive in such a manner shall constitute careless operation. LSA-R.S. 32:58. A person is required to drive a vehicle on the highway at a speed that is reasonable and prudent under the conditions and potential hazards then existing. LSA-R.S. 32:64.
In an action for damages based on negligence, the case is properly governed by comparative fault principles. LSA-C.C. art. 2323. Several factors are considered in comparing the relative fault of the parties, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, either superior or inferior, and (5) any extenuating circumstances which might require the actor to *135 proceed in haste, without proper thought. Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La.1985). An appellate court may not set aside a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State DOTD, 617 So.2d 880 (La.1993).
In the present case, each driver was required to exercise due care while operating their vehicles on the highway. Applying the factors set forth in Watson v. State Farm Fire and Casualty Ins. Co., supra, we note that the defendant, James Kirkpatrick, acknowledged that although he knew turning his truck would temporarily block the highway and that traffic was approaching from behind, he continued his turning maneuver despite his awareness of the potential danger to other drivers. In contrast, the plaintiff's conduct in driving on the highway and in failing to more quickly notice the turning truck was inadvertent.
The defendant's conduct involved significant risk, particularly with the reduced visibility due to the darkness and misting rain. In support of their contention that plaintiff failed to avoid the accident because she was following the truck too closely, defendants refer to notes by Dr. Mary Ellen Hayden, who wrote that plaintiff stated she was driving behind a large trailer truck which went over a hill and turned. However, this statement does not necessarily contradict the plaintiff's testimony that she did not see the truck until after it had made its turn. In addition, Kirkpatrick testified that he did not see the plaintiff's automobile when he looked behind the truck as he began his turn, but could only see the glow from her headlights. This testimony indicates that the plaintiff's vehicle was not unreasonably close to the truck prior to the accident. The evidence shows that plaintiff did not create the risk, but was confronted with an unexpected obstruction of the highway caused by defendant's action.
Concerning the capacity of the parties, the defense expert, John Bentley, testified that he took photographs of the accident area to represent a driver's "field of view" at four different points ranging from 600 to 645 feet from the parked tanker trailer. Bentley opined that the tanker lighting should have been visible to an oncoming driver well in advance of the collision, that the tank's white color enhanced its visibility and that the accident could have been avoided had plaintiff maintained a proper lookout. However, the plaintiff's expert, Andrew McPhate, opined that the tanker's curved shape made it less reflective and that dirt on its clearance lights, along with the dark misty conditions, reduced their visibility.
Although Bentley acknowledged that darkness, misting rain and dirt could inhibit the tanker's visibility, he apparently did not account for these factors in forming his opinion of the distance at which plaintiff should have noticed the truck in the road. In addition, the daylight photographs relied upon by Bentley do not depict the lighting conditions existing at the time of the accident, and could have been somewhat misleading to the jury, particularly since the record does not indicate that the trial court gave a limiting instruction when the photographs were admitted into evidence.
To support their contention that plaintiff should have been able to avoid the collision, the defendants point out that Homer, Louisiana, Police Chief Rodney Hollenshead, who was driving south on Highway 79 shortly after the accident, was able to stop his vehicle safely. However, Chief Hollenshead testified that he began applying his brake after he saw the tail lights of plaintiff's automobile, and that he had not noticed any lights on the tanker as he approached.
The record does not indicate the presence of any street lights in the vicinity or of any signs warning motorists to watch for wide-turning trucks. A motorist has a right to assume that the road is safe for travel and does not have a duty to guard against unexpected obstacles, which he not only does not have reason to anticipate, but which are difficult to discover. Bordelon v. State Dept. of Highways, 253 So.2d 677 (La.App. 1st Cir.), writ denied, 260 La. 18, 254 So.2d 619 (1971). Although we agree with the trial court's finding that the plaintiff was not without fault in the present accident, after considering the evidence that the defendant knowingly created *136 the hazard in blocking the highway under conditions of reduced visibility, we conclude that the jury was clearly wrong in allocating 80% fault to the plaintiff.
After weighing the foregoing comparative negligence factors, we find that the proportion of fault attributable to plaintiff cannot exceed twenty percent (20%), and that eighty percent (80%) of the fault is attributable to the defendant, James Kirkpatrick. In reaching this conclusion, we pretermit a discussion of the plaintiff's assignment of error concerning the admission of photographic evidence.

Damages
The plaintiff contends the jury erred in awarding only a portion of her medical expenses. Plaintiff argues she is entitled to an award for the total amount of her medical care related to her injuries sustained in the accident.
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and his complaints of injury. American Motorist Insurance Co. v. American Rent-All, Inc., 579 So.2d 429 (La.1991). The test for determining the causal relationship between the accident and subsequent injuries is whether the plaintiff proved, through medical testimony, that it was more probable than not that the subsequent injuries were caused by the trauma suffered in the accident. Starnes v. Caddo Parish School Board, 598 So.2d 472 (La. App. 2d Cir.1992).
A plaintiff's medical condition is presumed to have resulted from an accident if the injured person was in good health prior to the accident, but shortly after the accident, the disabling condition manifested itself. To overcome this presumption, the defendant must show some other particular incident could have caused the injury in question. Housley v. Cerise, 579 So.2d 973 (La.1991).
In the present case, the plaintiff's physician, Dr. Greg Pesnell, testified that during the period from March 1993 to February 1994, plaintiff complained to him of headaches and pain in the neck and shoulder. Dr. Pesnell stated that he saw plaintiff several times for these complaints at Homer Hospital, where they both worked. A nurse at the hospital, Ginger Smith, also testified that plaintiff began complaining of headaches and neck pain shortly after returning to work.
In their brief, defendants dispute that such complaints were made and assert that a gap in the medical records indicates that plaintiff was not treated for pain from March 1993 to February 1994. At trial, plaintiff explained that as an employee of Homer Hospital, she was seen for her headaches and neck pain by Dr. Pesnell as a courtesy and to reduce her time away from the job, and that medical records for such visits were not maintained. Plaintiff's account was corroborated by the testimony of Dr. Pesnell and Nurse Smith.
Defendants contend that plaintiff's claim is contradicted by other medical records indicating that Dr. Pesnell treated plaintiff several times during this period for complaints not related to the auto accident. However, the evidence shows that three of these visits involved removal of plaintiff's sutures, which were a result of the accident. Another visit concerned a stomach problem in February 1994, the same month in which plaintiff later visited Homer Hospital for stiffness related to the accident. Contrary to the defendants' contention, these medical records involving removal of sutures and other health problems do not contradict the testimony that on other occasions, plaintiff complained of headaches and pain in the neck and shoulders from March 1993 through February 1994.
Dr. Pesnell testified that during this time period, he examined plaintiff and found neck spasms and her complaints of pain increased. Dr. Pesnell referred plaintiff to Dr. Anil Nanda, a neurosurgeon. In March 1994, Dr. Nanda examined plaintiff and ordered an MRI of the brain and the cervical spine. The MRIs were reported as normal. Dr. Nanda did not find any nerve damage and did not provide further treatment.
Dr. Pesnell next referred plaintiff to Dr. Robert Goodman, a rheumatologist, who noted that an x-ray showed a straightening of the cervical lordosis, indicating muscle spasms in plaintiff's neck. Dr. Goodman diagnosed plaintiff as having a myofascial *137 strain injury of the cervical spine and the right pectoral girdle. He prescribed conservative treatment, including pain relief medication and physical therapy. Dr. Goodman opined that plaintiff's pain and spasms in the neck and shoulder area were more probably than not caused by the injuries sustained in her March 1993 accident.
Dr. Paul Ware, a board certified neurologist and psychiatrist, was retained by State Farm to perform an independent medical examination of the plaintiff. In April 1995, Dr. Ware conducted a neurological evaluation, which included a mental status examination lasting approximately fifteen minutes, to determine the functional level of plaintiff's brain. Dr. Ware testified that he did not find any abnormalities in plaintiff's neurological examination and that her performance was within the limits of normal function. Dr. Ware diagnosed plaintiff with a mild cerebral concussion and cervical sprain, but stated that he did not find any evidence of residual injury to plaintiff's brain or nervous system. Dr. Ware opined that the medical expenses incurred by plaintiff after February 1994, were not related to her injuries sustained in the accident. However, Dr. Ware acknowledged that he could not specify the etiology or cause of plaintiff's headaches, but thought they were probably caused by tension. Nor did he offer an alternative to the accident as the cause for plaintiff's neck pain.
The record shows that plaintiff was in good health prior to the March 1993 accident, in which she sustained a concussion and neck sprain. In addition, Dr. Nanda, Dr. Goodman and Dr. Pesnell each opined that plaintiff's pain symptoms were more probably than not related to the injuries which she sustained in the automobile accident. Therefore, the plaintiff is entitled to the legal presumption that her headaches and neck pain were caused by the accident. Although defendants introduced into evidence photographs of plaintiff playing in a 1996 softball game, defendants failed to establish that any other particular incident had occurred since the accident to cause plaintiff's pain symptoms. Consequently, the plaintiff satisfied her burden of proving a causal relationship between the accident and her injuries and is entitled to recover all reasonable medical expenses incurred.
The plaintiff contends that the jury's general damage award was inadequate. "General damages" involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment or other losses of lifestyle which cannot be measured definitively in terms of money. Daigle v. U.S. Fidelity & Guaranty Ins. Co., 94-0304 (La.App. 1st Cir. 5/5/95), 655 So.2d 431.
The role of an appellate court in reviewing awards of general damages is not to decide what it considers an appropriate award, but rather to review the exercise of discretion by the trial court. Andrus v. State Farm Mutual Automobile Ins. Co., 95-0801 (La.3/22/96), 670 So.2d 1206. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts and circumstances particular to the case under consideration. The discretion vested in the trier of fact is "great," so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993); Evans v. Haynie, 26,135 (La.App.2d Cir. 9/21/94), 643 So.2d 273.
In the present case, Dr. Pesnell and Dr. Goodman testified that plaintiff would continue to need conservative treatment for pain over an indefinite time. Dr. Nanda opined that plaintiff's symptoms should eventually improve. The neurological testing conducted by Dr. Mary Ellen Hayden, a neuropsychologist, and Dr. Ware, indicated that plaintiff had not sustained any lasting cognitive damage in the accident. There was evidence that although plaintiff continues to feel pain in her neck and shoulders and experiences headaches, she has not been incapacitated by her injuries. Plaintiff acknowledged that she has been able to participate in athletic activities, but stated that her physical condition has not been restored to the pre-accident level. After considering the foregoing circumstances and reviewing the record, we cannot say that the jury's general damage award of $20,000 is abusively low. The assigned error lacks merit.

*138 Medical Expenses

A plaintiff may ordinarily recover reasonable past and future medical expenses which she incurs as a result of the injury. Dowe v. Grady, 540 So.2d 1040 (La.App. 2d Cir.1989). Allegations that certain medical expenses were incurred and presentation of the bills, absent contradictory evidence or reasonable suspicions that the bill is unrelated to the accident, is sufficient to support inclusion of the item in the judgment. Rowsey v. Jones, 26,823 (La.App.2d Cir. 5/10/95), 655 So.2d 560. Here, the jury awarded plaintiff $6,900 for past medical expenses. Defendants assert that additional medical expenses are unwarranted because plaintiff has participated in various athletic activities, moved several times and worked. However, defendants have not shown that plaintiff's activities have been unreasonable. Plaintiff has established that her pain symptoms are related to the accident and that she incurred medical expenses of $26,298.64, as reflected in the medical bills introduced into evidence. Based upon this record, the jury's award for medical expenses was abusively low.
We note that Dr. Pesnell and Dr. Goodman prescribed conservative treatment for plaintiff's continued pain. However, the evidence indicates that the treatment delivered by Southwest Medical Center, Dr. Frank Sholte and Dr. Donna Holder was relatively intensive and often continued over consecutive days. Such treatment appears inconsistent with the recommendations of Dr. Pesnell. Thus, we have included only one-half of the total charges of Southwest Medical Center, Dr. Frank Sholte and Dr. Donna Holder in the award. After reviewing the medical bills in the record, we amend the trial court's judgment to increase the plaintiff's award for medical expenses to $21,524.
The plaintiff argues that she is entitled to an award for future medical expenses. Such an award is, in great measure, speculative and is not susceptible of calculation with mathematical precision. However, like any other element of damage, future medical expenses must be established with some degree of certainty. Daigle, supra.
Here, the interrogatories to the jury asked only for an amount of "Special Damages," and did not separate the award into past and future medical expenses. Although Dr. Pesnell opined that plaintiff would require continued conservative treatment for pain, he was only able to offer an estimate of the possible cost of such treatment. The medical testimony is insufficient to establish the specific future treatment which will be required, or its expense, with any degree of certainty. Therefore, we cannot make an award of future medical expenses upon this record.

Expert Fees
The plaintiff contends the trial court erred in assessing an excessive expert witness fee to John Bentley. The amount fixed for expert fees is a matter within the discretion of the trial court and should not be disturbed on appeal absent a showing of manifest abuse of that discretion. Ellis v. Allstate Ins. Co., 453 So.2d 1209 (La.App. 5th Cir.1984). The record shows that the trial court awarded to Bentley expenses of $6,285.35, an amount which is approximately one-half of the total bill submitted for his services. After reviewing the record, we cannot say the trial court abused its discretion. The assigned error lacks merit.

CONCLUSION
For the foregoing reasons, the trial court's judgment is amended to apportion 20% of fault to the plaintiff and 80% to the defendants and to increase the amount awarded to plaintiff for medical expenses, and is otherwise affirmed. Judgment is rendered in favor of plaintiff, Lori Ann Sims, and against defendants, James Kirkpatrick, Roberson Trucking Company and State Farm, for $33,219.20 representing 80% of her damages, with legal interest from the date of judicial demand. All costs are assessed 80% to the defendants and 20% to plaintiff.
AMENDED IN PART AND AFFIRMED AS AMENDED.