J2DALEY, Judge.
This is an appeal by the plaintiff, Karen Dufour, in a personal injury lawsuit stemming from an automobile accident. For reasons assigned, we affirm the judgment of the trial court and remand this matter for further proceedings.

FACTS

On February 16, 1996, the Mrs. Dufour was driving northbound on Clearview Parkway in Metairie, Louisiana, when she was struck from the rear by a tractor-trailer truck driven by Johnnie L. Gordon. At the time of the accident, Mr. Gordon was in the course and scope of his employment with Alabama Food Service, Inc. Mrs. Dufour filed suit for injuries she sustained in this accident against Mr. Gordon, Alabama Food Service, Inc., and their liability insurer, Empire Fire & Marine Insurance Company. At trial, the defendants stipulated to liability, and the plaintiff stipulated that her damages were less than $50,000. The trial court rendered judgment in favor of plaintiff in the amount of $28,250.51. | aPlaintiff has appealed, claiming the amounts awarded are inadequate.
Mrs. Dufour was the only witness to testify at trial. She gave a detailed description of the accident, explaining that when she noticed the truck very close to her ear, she tried to speed up. When she pressed the accelerator, the tachometer showed an increase, but the car would not speed up because the truck was hooked onto her bumper. Her car then turned to the side and the windows shattered as the driver’s side door crushed in. While this was happening, Mrs. Dufour unbuckled her seat belt and moved to the passenger’s side. The truck finally stopped and she was helped out of the car by witnesses. She was covered with glass and very upset.
Following the accident, Mrs. Dufour experienced neck, shoulder and low back pain, and right arm weakness. She sought treatment from a chiropractor on February 22, 1996. She was treated with ice packs and muscle stimulation therapy for two weeks, without relief of her pain. She sought treatment from Dr. Maria Abril on March 15, 1996. He treated her with traction and heat therapy. Dr. Abril ordered an MRI and EMG. She remained under Dr. Abril’s care for nine months, at which time she was referred to Dr. Kenneth Vogel. At this point, Mrs. Dufour’s low back pain had resolved, but she continued to experience pain and weakness in her right arm. Dr. Vogel evaluated her and referred her to Dr. D.L. Kewal-ramani, a specialist in rehabilitation. Mrs. Dufour began physical therapy under Dr. Kewalramani’s care. This consisted of ultrasound massage, stimulants and exercises. She was also given cortisone injections. After several months her symptoms had decreased. She stopped attending physical therapy, although she did perform exercises at home and took hot baths to relieve the pain.
In October 1997, she returned to Dr. Vogel because the right arm pain had increased, limiting her activities. ’ Dr. Vogel discussed surgery as a possible L treatment for her pain. Mrs. Dufour did not want to have surgery so she returned to Dr. Kewalramani and physical therapy. At the time of trial she was still under Dr. Kewalramani’s care. Although her arm pain and weakness had improved, she continued to experience difficulty performing everyday activities. She continued to work and did not have any work restrictions.
The depositions of Drs. Vogel and Kewal-ramani were submitted into evidence. Dr. Vogel, a neurosurgeon testified that when he first examined Mrs. Dufour on December 10, 1996, she complained of persistent cervical and right arm pain, as well as lumbosacral pain. On physical examination, he noted muscle spasm, decreased range of motion and decreased grip on the right. She also had decreased sensation to pinprick in her *53 right hand. Dr. Vogel reviewed Mrs. Duf-our’s diagnostic tests. He concluded the cervical MRI was within normal limits, but the EMG showed radiculopathy on the right side at the C7 nerve root. Dr. Vogel explained that there was abnormal painful motion of a segment of her spine and the pain was emanating from the facet joint itself rather than compression of the nerve root. He diagnosed her as having chronic cervical strain with possible cervical instability and chronic lumbar strain. Dr. Vogel related this condition to the February 1996 accident. He referred her to Dr. Kawalramani for treatment. When Mrs. Dufour returned to Dr. Vogel in October 1997, she reported cervical and right shoulder pain. He noted muscle spasms, which indicate an ongoing injury, on physical examination. There was mild right brachial plexus tenderness and the grip in the right hand was normal. Dr. Vogel testified that he explained to Mrs. Dufour that he did not feel conservative treatment would relieve her symptoms and suggested a facet arthrogram and block. Mrs. Dufour declined to undergo these procedures.
RDr. Kewalramani, an expert in physical medicine and rehabilitation, testified that he examined Mrs. Dufour on January 21, 1997. She complained of neck, back and right shoulder pain with weakness of her right arm. Dr. Kewalramani reviewed her EMG, and concluded it indicated radiculopathy at the C7 nerve root. Dr. Kewalramani felt the MRI showed a bulge in the disc located between cervical vertebrae four and five, and cervical vertebrae six and seven. He felt these findings were consistent with the findings on physical examination. He noted muscle spasms on physical examination. His impression was myofascial cervical region pain syndrome with radiculopathy, right bici-pital tendonitis, and myofascial lumbar region pain syndrome. He treated Mrs. Duf-our with physical therapy, anti-inflammatory medication, muscle relaxants, and cortisone injections. Mrs. Dufour’s condition improved over the course of Dr. Kewalramani’s treatment. On March 31, 1997, he discharged Mrs. Dufour from his care. In February 1998, Mrs. Dufour returned to his office complaining of right arm pain. He noted tenderness, muscle spasm, and decreased range of motion on physical examination. Dr. Kewal-ramani prescribed a course of physical therapy. At the completion of physical therapy, Mrs. Dufour continued to complain of cervical and right arm pain. His last examination of Mrs. Dufour was May 20, 1998 at which time Mrs. Dufour continued to complain of stiffness and soreness in the neck and right shoulder and “heaviness” in the right arm. Dr. Kewalramani testified that Mrs. Dufour has myofascial pain syndrome with radiculo-pathy, and will continue to suffer with pain and altered sensation for the rest of her life. Her symptoms will increase when she is active and with changes in the weather. He assigned her a 10-15% anatomical disability to her whole body. He estimated that she will need two doctor visits per year, with two courses of physical therapy per year. She will | (¡also need anti-inflammatory medication, and cortisone injections. Dr. Kewalramani related Mrs. Dufour’s condition to the February 1996 accident.
The deposition of Dr. Stephen Wilson was admitted into evidence by the defendants. Dr. Wilson performed an examination on Mrs. Dufour at the request of the defendants on April 20, 1998. He testified that Mrs. Dufour complained of pain in the posterior neck with radiation to her right shoulder. His examination showed no muscle spasm and no muscle atrophy. He felt that the disc bulge on the MRI was so mild, it was “almost normal,” and the findings on the EMG were insignificant. Dr. Wilson testified there were no objective findings on his exam to explain her complaints of pain. He further testified that there was no need for Mrs. Dufour to undergo surgery.
Mrs. Dufour was awarded $16, 000.00 in general damages, $8,250.51 past medical expenses, and $4,000.00 in future medical expenses.

DISCUSSION

In her first assignment of error, the plaintiff contends the trial court erred in awarding $16,000.00 in general damages when the medical testimony clearly shows she will have cervical pain for the rest of her life. She argues the testimony of her two treating physicians should have been given more than *54 that of Dr. Wilson, and requests the award be increased to $40,438.92.
In reviewing a general damage award on appeal, the function of the appellate court is to review the exercise of discretion by the trial court, not to determine what the appellate court considers an appropriate award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
On appeal, the initial inquiry is whether the amount awarded by the trial 17court is a clear abuse of the much discretion afforded the trial court, given the particular injuries and their effects on the particular injured person. Id. It is only when the award is, in either direction, beyond the amount which a reasonable trier of fact could assess for the effects on the particular plaintiff given the particular circumstances, can the appellate court disturb the award. Id. at 1261.
We find the case of Sims v. State Farm Auto. Ins. Co., 30,602 (La.App. 2nd Cir. 5/13/98), 714 So.2d 132, to be strikingly similar to the case at bar. In Sims, the plaintiff was involved in an accident with a tractor-trailer truck, and had to be extracted from her vehicle and transported by helicopter to a hospital. She was treated for a concussion, lacerations on her finger, and pain in her ear, shoulder, and ankle. After being released from the hospital, she continued to suffer from headaches and neck pain. She was treated intermittently for these complaints. She continued to experience pain in her neck and shoulder, as well as headaches at the time of trial, but had not been incapacitated by her injuries. There was testimony that the plaintiff would continue to need conservative treatment for pain for an indefinite time. The Court affirmed the jury’s general damage award of $20,000.00.
In the present case, the testimony of Mrs. Dufour established that she experienced significant pain in her neck, shoulder, and right arm. Over the course of treatment, Mrs. Dufour’s pain improved, although at the time of trial she continued to experience discomfort. She mentioned that she was unable to fully participate in some activities such as swinging her young son, but did not further elaborate. There was testimony from Dr. Vogel that surgery would possibly alleviate the pain, but plaintiff testified that she had no plans for future surgery. Given the facts and circumstances of this case, we see no abuse of discretion in the | «trial court’s general damage award.
In her second assignment of error, the plaintiff argues the trial court erred in failing to award past loss wages when the parties stipulated to a wage loss letter which was admitted into evidence. Plaintiff contends the parties stipulated to past loss wages in the amount of $1,310.51. The defendant denies that there was any stipulation regarding loss wages. The defendant contends the letter from plaintiffs employer was admitted without objection as to authenticity only.
The record is void of any stipulation regarding loss wages. A letter from plaintiffs employer was admitted into evidence. This letter, dated May 8, 1997, states that Mrs. Dufour “lost time from work in the amount of 158.09 hours since February 16, 1996 to the present.” The letter went on to state the “amount of wages lost total $1310.57.”
The trial court found there was no evidence or testimony submitted to relate these lost wages to this accident and plaintiff failed to carry her burden of proving these damages. We agree with the trial court. The letter submitted by plaintiff only states how much time has been lost from work since the accident. It does not state the reason the time was lost from work. Mrs. Dufour did not testify as to lost wages, nor was there any testimony as to time loss from work from her treating physicians. In fact, Dr. Kewal-ramani stated that he did not discuss work with Mrs. Dufour and as far as he knew Mrs. Dufour was working throughout the time he treated her.
In her final assignment of error, the plaintiff argues the trial court erred in failing to set the expert fees for the testimony of Drs. Vogel and Kewalramani. The trial court assessed all costs to the defendant. However, there is nothing in the record to indicate the *55 plaintiff filed a Rule to Set Costs in the trial court.
[9Code of Civil Procedure article 2088 provides that the trial court retains jurisdiction to set and tax costs and expert witness fees after the jurisdiction of the appellate court has attached. Thus, plaintiff must file a Rule to Set Costs in the trial court and the trial court must rule on this before it is reviewable on appeal. See Chamberlain v. Burcham, 624 So.2d 20 (La.App. 2nd Cir.1993).
For reasons assigned, the judgment of the trial court is affirmed and this matter is remanded for further proceedings consistent with this opinion.

JUDGMENT AFFIRMED; MATTER REMANDED.