951 So.2d 138 (2007)
Harold ALEX, Jr., et al.
v.
RAYNE CONCRETE SERVICE, et al.
Nos. 2005-C-1457, 2005-C-2344, 2005-C-2520.
Supreme Court of Louisiana.
January 26, 2007.
Rehearing Denied March 30, 2007.
*141 Allen & Gooch, Charles M. Kreamer, Robert A. Robertson, Lafayette, for Applicant (2005-C-1457).
Harold D. Register, Jr., Lafayette, Johnson, Stiltner & Rahman, Patricia J. Delpit, Baton Rouge, for Respondent (2005-C-1457).
Allen & Gooch, Charles M. Kreamer, Robert A. Robertson, Lafayette, for Applicant (2005-C-2344).
Harold D. Register, Jr., Lafayette, Johnson, Stiltner & Rahman, Patricia J. Delpit, Baton Rouge, for Respondent (2005-C-2344).
Harold D. Register, Jr., Lafayette, for Applicant (2005-C-2520).
Allen & Gooch, Charles M. Kreamer, Robert A. Robertson, Lafayette, Patricia J. Delpit, Baton Rouge, for Applicant (2005-C-2520).
KNOLL, J.
We granted these consolidated writs to resolve a split among the courts of appeal regarding whether a Batson/Edmonson[1] challenge in a civil trial must be taken to the appellate court by supervisory writ or whether it may be considered on appeal following the conclusion of the trial. Alex v. Rayne Concrete Service, 05-1457 (La.1/27/06), 922 So.2d 524. After reviewing the record and the applicable law, we hold an intermediate appellate court may review a Batson/Edmonson challenge in a civil case on supervisory writ application or on appeal. Further, on the merits of the challenge in this case, we affirm the court of appeal's ruling that the trial court erred in granting a peremptory challenge of a juror in violation of Batson/Edmonson. *142 However, we reverse and set aside that part of the appellate court judgment affected by its de novo review, and remand this matter to the trial court for a new trial.

FACTS AND PROCEDURAL HISTORY
This matter arises out of a personal injury lawsuit Harold Alex, Jr. ("Alex") brought against Rayne Concrete Service ("Rayne Concrete") and its insurer, Employers Mutual Casualty Company. Alex sustained an alleged work-related injury to his lower back on October 17, 1995 when his employer, Louisiana Concrete Specialist ("LCS"), was pouring and finishing the decking around a swimming pool Professional Pools was constructing at a residence in Rayne, Louisiana. Alex was injured when an employee of Rayne Concrete, who was driving the concrete truck, lowered the trough through which the concrete was poured onto Alex's back.[2]
The matter was first tried to a jury on December 1, 1998, but resulted in a mistrial after the jury was unable to reach a verdict on the liability issue. A second jury trial was held on December 18, 2000, and the jury returned a verdict finding Alex 80% at fault, and Rayne Concrete 20% at fault, and awarding damages totaling $123,771.00. Alex filed a motion for judgment notwithstanding the verdict and, alternatively, for a new trial. Alex's motion for new trial was granted and affirmed on appeal.[3]Alex v. Rayne Concrete Service, 01-1535 (La.App. 3 Cir. 4/3/02), 813 So.2d 1189.
This matter was tried before a jury a third time from July 12, 2004 to July 15, 2004. After jury selection, Alex made a Batson/Edmonson challenge objecting to the striking of four potential jurors. The trial court rejected this challenge, and Alex did not seek review of this decision by writ application. At the conclusion of the trial, the jury rendered a verdict apportioning fault 45% to Alex, 50% to Rayne Concrete, and 5% to LCS, and awarded damages totaling $76,000.00.
Alex appealed, alleging, among other things, the trial court's ruling on the Batson/Edmonson challenge was manifestly erroneous. The court of appeal accepted this matter for hearing en banc for the purpose of determining whether a party must seek review of a Batson/Edmonson challenge by supervisory writ application or whether the party can wait until the conclusion of the trial to seek appellate review. After considering the split among the circuits on this issue, the court of appeal held:
After considering the matter, we find that the precepts of judicial economy and fundamental fairness would be better served by allowing a party to a civil suit to have his Batson/Edmonson challenge heard on appeal, rather than solely on application for supervisory writ. Other than the case law cited above, we base this finding on several other reasons. First, on the grounds of judicial economy, we note the burden and strain that would be placed on an attorney, especially a sole practitioner or a member of a small firm, if required to file a writ application during trial. This is especially true in those instances where the trial court refuses to grant a stay of the jury trial while awaiting a review of its decision. Second, we note the impracticality of requiring this type of *143 challenge to be taken upon a writ application. If the trial court refuses to grant a stay of the proceedings and the jury trial continues, a mistrial would have to be declared if the challenger's writ is granted and the appellate court holds that the trial court's decision is erroneous in dismissing the affected jurors. Moreover, if the trial court were to grant a stay, it would be taxing on the jury venire as, depending on the decision reached, the excluded venire members, the jury, and the rest of the venire would have to return to court to complete jury selection and then the trial. Thus, in these two instances judicial economy would be impeded.
With regard to fundamental fairness, we note, as did the first circuit in Hurts [v. Woodis, 95-2166 (La.App. 1 Cir. 6/28/96),] 676 So.2d 1166, that the review of a trial court's ruling on a party's challenge of a juror for cause is routinely reviewed on appeal. As found by the first circuit, we find no meaningful distinction between this type of ruling and a trial court's ruling on a party's Batson/Edmonson challenge. Further, as we pointed out, Batson challenges are taken up on appeal in criminal cases all the time. We can find no distinction between Batson/Edmonson challenges in the context of criminal and civil matters. Finally, the challenge in Edmonson was considered by the United States Supreme Court on appeal.
Considering the foregoing, we reverse our opinion in Adams v. Canal Indemnity Co., 99-1190 (La.App. 3 Cir. 5/10/00), 760 So.2d 1197, writs denied, 00-1636, 00-1637, 00-1640 (La.9/22/00), 769 So.2d 1213. Although we will still consider Batson/Edmonson challenges via writ applications, we will also address such issues on appeal. The remaining issues in this case will be addressed by the original panel to which it was assigned.
Alex v. Rayne Concrete Service, 04-1555 (La.App. 3 Cir. 5/6/05), 902 So.2d 563 (en banc).
As a result of this en banc ruling, the court of appeal also considered plaintiff's remaining issues in a separate opinion by the original panel assigned to the case. The court of appeal held the trial court erred in denying plaintiff's Batson/Edmonson challenge to Rayne Concrete's systematic exclusion of blacks from the jury. The court of appeal concluded the trial judge committed legal error by allowing a peremptory challenge of Reva Mae Charlot, an African-American woman, which deprived Alex of a jury of his peers. Alex v. Rayne Concrete Service, 04-1555 (La.App. 3 Cir. 9/14/05), 915 So.2d 931, 937. Recognizing this was the third jury trial, the court of appeal conducted a de novo review rather than remanding the case for a new trial. Id. After considering plaintiff's arguments that the trial court erred in admitting certain medical records, and that the jury erred in apportioning 45% fault to Alex and in its assessment of damages, the court of appeal apportioned 20% fault to Alex and 80% to Rayne Concrete, and awarded Alex $75,000.00 in general damages, $13,000 in past medical expenses, and $13,000 in past lost wages. The appellate court further apportioned costs 20% to Alex and 80% to Rayne Concrete. Id. at 938-948.
We granted and consolidated defendants' writ applications, in which they allege the court of appeal erred in reversing the trial court's Batson/Edmonson ruling, in failing to conduct a harmless error analysis to determine whether the exclusion of the juror was harmless, and in apportioning 80% fault to Rayne Concrete. Alex v. Rayne Concrete Service, 05-2344 (La.1/27/06), 922 So.2d 525. We also granted and consolidated Alex's writ applications, *144 which alleged the court of appeal erred in conducting a de novo review, in finding defendants presented plausible reasons for challenging prospective jurors Thomas and Jordan, in admitting certain medical records, in apportioning 20% fault to Alex, and in its assessment of damages, and in taxing 20% of the costs of the appeal to Alex. Alex v. Rayne Concrete Service, 05-2520 (La.5/5/06), 927 So.2d 299.[4]

DISCUSSION
The primary legal issue in this case is the proper procedural mechanism by which a party may seek review of a Batson/Edmonson challenge in a civil case. The general concept of allocation of jurisdiction in civil actions in Louisiana is trial in the district court, with the constitutional right to appeal to the court of appeal, LA. CONST. ANN. art. V, § 10, and to seek discretionary review by the Supreme Court, LA. CONST. ANN. art. V, § 5. FRANK L. MARAIST AND HARRY T. LEMMON, 1 LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE, (West 1999). An appeal "is the exercise of the right of a party to have a judgment of a trial court reversed, modified, set aside, or revised by an appellate court." LA. CODE CIV. PROC. ANN. art. 2082. A party may appeal (1) from a final judgment in actions in which appeals are given by law; (2) an interlocutory judgment only when expressly provided by law; and (3) from a judgment reformed in accordance with an additur or remittitur. LA.CODE CIV. PROC. ANN. art. 2083 (amended in 2005). A final judgment in a civil case is generally appealable to the intermediate appellate court as a matter of right. There is no prohibition in the constitutional or statutory law which would prohibit a party from appealing a trial court's ruling on a Batson/Edmonson challenge at the conclusion of the trial.
A ruling on a jury challenge is an "interlocutory judgment," as it "does not determine the merits but only preliminary matters in the course of the action." LA. CODE CIV. PROC. ANN. art. 1841. While the Code of Civil Procedure specifically designates a few interlocutory judgments as appealable, review of all other interlocutory judgmentseven those which cause irreparable injurymust be sought through supervisory writs under LA.CODE CIV. PROC. ANN. art. 2201. MARAIST AND LEMMON, § 14.3, p. 104 (2006 Pocket Part). A ruling on a jury challenge is not among the interlocutory judgments that are "expressly provided by law" as appealable, such that a party does not have the right to "appeal" a jury challenge prior to the entry of a final judgment by the trial court. Pursuant to the amendment of LA. CODE CIV. PROC. ANN. art. 2083 in 2005, an application for supervisory writs under LA. CODE CIV. PROC. ANN. art. 2201 is the primary means of seeking review of interlocutory judgments. Id. at 116. LA.CODE CIV. PROC. ANN. art. 2201 provides that "[supervisory writs maybe applied for and granted in accordance with the constitution and rules of the supreme court and other courts exercising appellate jurisdiction.]"[5] *145 There is no question that, as an interlocutory order, an intermediate court of appeal can review a trial court's ruling on a Batson/Edmonson ruling upon supervisory writ application.[6]
However, when presented with a Batson/Edmonson challenge, our courts of appeal have conflicting views as to whether such ruling can also be considered on appeal. The Second and Fourth Circuits have held that judicial economy, procedural due process, and equal protection all mandate that when a party in a civil case wishes to seek appellate court review of a Batson/Edmonson issue, it must do so by an application for supervisory writs and may not do so by an appeal after trial. Phillips v. Winn Dixie Stores, Inc., 94-0354 (La.App. 4 Cir. 2/23/95), 650 So.2d 1259, 1263, writ denied, 95-0748 (La.4/28/95), 653 So.2d 599; Cooke v. Allstate Ins. Co., 93-1057 (La.App. 4 Cir. 4/14/94), 635 So.2d 1330, 1333, writ denied, 94-1257 (La.9/2/94), 659 So.2d 496; White v. Touro Infirmary, 93-1617 (La.App. 4 Cir. 2/11/94), 633 So.2d 755, 760; Holmes v. Great Atlantic and Pacific Tea Co., 622 So.2d 748, 760 (La.App. 4 Cir.), writ denied, 629 So.2d 1178 (La.1993); Freeman v. Humble, 27,419 (La.App. 2 Cir. 9/27/95), 661 So.2d 652, 654. Certain of these *146 courts have expressed the view that "[p]roceeding to trial when there is an error which does not have an effect on the fact finding process but can nullify the entire proceeding, is a tremendous waste of judicial time and resources." Freeman, supra at 654 (citing Holmes, supra and White, supra). Nevertheless, both the Second and Fourth Circuits have reviewed Batson/Edmonson challenges on appeal. See Cooke, supra; Matthews v. Arkla Lubricants, Inc., 32,121 (La.App. 2 Cir. 8/18/99), 740 So.2d 787, 800-01; Freeman, supra at 654; Smith v. Lincoln General Hosp., 27,133 (La.App. 2 Cir. 6/21/95), 658 So.2d 256, 270-71, writ denied, 95-1808 (La.10/27/95), 662 So.2d 3.
On the other hand, the First Circuit and now the Third Circuit review trial court rulings on a party's Batson/Edmonson challenge on appeal, as well as under their supervisory jurisdiction. Grayson v. R.B. Ammon and Associates, Inc., 99-2597 (La. App. 1 Cir. 11/3/00), 778 So.2d 1, 7-9, writs denied, 00-3270, 00-3311 (La.1/26/01), 782 So.2d 1026, 1027; Lee v. Magnolia Garden Apartments, 96-1328 (La.App. 1 Cir. 5/9/97), 694 So.2d 1142, 1146-49, writ denied, 97-1544 (La.9/26/97), 701 So.2d 990; Hurts v. Woodis, 95-2166 (La.App. 1 Cir. 6/28/96), 676 So.2d 1166, 1172; Richard v. St. Paul Fire and Marine Ins. Co., 94-2112 (La.App. 1 Cir. 6/23/95), 657 So.2d 1087, 1089-91; Masse-Richardson v. Samudia, 05-987 (La.App. 3 Cir. 3/15/06), 925 So.2d 722. The Fifth Circuit has also reviewed Batson/Edmonson challenges on appeal. Fisher v. River Oaks, Ltd., 93-677 (La.App. 5 Cir. 3/16/94), 635 So.2d 1209, writ denied, 94-932 (La.6/3/94), 637 So.2d 503.
This Court has reviewed Batson challenges in a criminal case on appeal, State v. Myers, 99-1803 (La.4/11/00), 761 So.2d 498, and routinely reviews Batson challenges in capital cases on direct appeal. Similarly, challenges for cause in civil cases are also routinely reviewed on appeal. See, e.g., Scott v. American Tobacco, Co., 02-770 (La.3/28/02), 814 So.2d 544; Lockett v. State, Dept. of Transp. and Development, 02-651 (La.App. 1 Cir. 4/2/03), 844 So.2d 949; Bannerman v. Bishop, 28,382 (La.App. 2 Cir. 7/2/96), 688 So.2d 570, writ denied, 96-2755 (La.1/10/97), 685 So.2d 146; Menard v. Holland, 05-353(La. App. 3 Cir. 12/30/05), 919 So.2d 810, writ denied, 06-649 (La.5/26/06), 930 So.2d 29; Fisher, supra. Likewise, federal courts review peremptory and for cause challenges on appeal. See e.g., Edmonson, supra; Moran v. Clarke, 443 F.3d 646 (8th Cir.(Mo.) 2006).
Significantly, in light of the United States Supreme Court's decision in Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), that a defendant may rely on "all relevant circumstances" to raise an inference of purposeful discrimination under Batson, and not just the reasons proffered by the State in making the peremptory challenge, it seems reasonable, if not necessary in some circumstances, for a party to wait until after the entire trial is over to seek review of the peremptory challenge. For example, comments could even be made in closing argument that would be relevant under Miller-El to prove a party's racial motive in making an earlier peremptory challenge.
Thus, although judicial economy may be better served in some instances by requiring a party to seek review of a peremptory challenge by supervisory writ, we hold that a party is not required to proceed that way, and may seek review by appeal after the conclusion of the trial. Not only is this practice in line with the procedure utilized in criminal cases, it is also consistent with the practice regarding challenges for cause in civil cases and the practice in federal courts. Thus, we affirm the court of appeal's *147 en banc ruling that a Batson/Edmonson ruling in a civil case may be reviewed by an intermediate appellate court on appeal.

PEREMPTORY CHALLENGES
Having concluded the reviewing court properly considered this Batson/Edmonson ruling as an issue for appellate review, we now address the court of appeal's ruling that the trial court committed legal error when it granted Rayne Concrete's peremptory challenge to prospective juror, Reva Mae Charlot, in violation of Batson/Edmonson, and further in upholding the trial court's grant of Rayne Concrete's peremptory challenge to prospective jurors, Dennis Thomas and Natalie Jordan.
Rayne Concrete, relying primarily on language in State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997), contends the appellate court erred in faulting it for failing to question Charlot during voir dire and in further finding counsel's "gut feeling" about Charlot was insufficient reasons to justify striking her peremptorily.
At the beginning of the jury selection process in the case sub judice, four African-Americans, Dennis Thomas, Reva Mae Charlot, Mary Taylor and Natalie Jordan, were selected as part of the voir dire panel. The trial judge questioned all the prospective jurors as to their employment, marital status, and children. Prospective juror Charlot answered she was a housewife, married with five children, and her husband had a trucking company. Plaintiff's counsel conducted the only other questioning of Charlot, as follows:
MR. REGISTER: All right, thank you, sir. Ms. Charlot, how are you doing?
PROSPECTIVE JUROR CHARLOT: All right.
MR. REGISTER: That's good. Can you think of any reason that you don't want to serve?
PROSPECTIVE JUROR CHARLOT: None whatsoever.
MR. REGISTER: You're ready to go, huh? All right. I like that attitude? Okay, great. Thank you so much. . . .
After the panel had been questioned, the trial court challenged Taylor for cause and thereafter, Rayne Concrete used three of its peremptory challenges to excuse Thomas, Charlot, and Jordan. After the parties exercised all their challenges, plaintiff's counsel made his Batson/Edmonson challenge outside the presence of the jury:
MR. REGISTER: Wait, wait. Before we bring them back in I have an objection to make, Your Honor. At this particular time I'm going to make a Batson challenge against opposing Counsel, and I will state for the record that Mr. Alex has the right to a fair trial among his peers. Natalie Jordan, a black female, was rejected. Mary Taylor, a black female, was excused. Dennis Thomas, a black male, was excused. Reva Charlot, a black female, was excused. In light of the fact that the blacks that I mentioned were the only blacks on the panel, that leaves Mr. Alex without a jury of his peers, Your Honor. So we would impose a Batson ruling on that and would challenge that.
MR. KREAMER: Your Honor, I think all we have to do on that particular ruling is just state a non-race related reason for striking those particular jurors.
THE COURT: Okay.
MR. KREAMER: Mr. Thomas indicated that he worked in the concrete business for fifteen years and had not been trained, very similar to Mr. Alex. We don't want his particular history. We're afraid that anything that he might *148 think about what Mr. Alex went through being what the standard is in the industry, and he might not listen to what is going . . . on; as opposed to the guy, Mr. Kershaw, who was also in the industry. He was trained, and he knows the standards that are going to be consistent with the particular rules that are going to be testified to by Dennis Howard, the concrete liability expert.
Ms. Charlot: She and I just didn't get [good vibes].[[7]] I was looking at her, and she just looked like she didn't like me, and I think she liked Mr. Alex. And that's just based on my personal observations, and that was just kind of a gut feeling.
Ms. Jordan: There were many reasons. We thought she was very close to being a challenge for cause, and we did make a for cause challenge against her. She obviously wasn't going to be able to focus on the evidence. And she also answered some of my general questions in ways which I think would make her more favorable to the plaintiff than the defendant.
Then Ms. Taylor was struck for cause by Your Honor.
THE COURT: And was that the three that you talked about?
MR. REGISTER: Yes, Your Honor.
THE COURT: And [Mr. Register], quite honestly, I don't believe it applies in civil matters, but I think it's applicable in criminal matters, and I do think they asserted race-neutral reasons for their peremptory challenges[[8]]
MR. KREAMER: I agree, Your Honor, and I don't think it does apply, but just out of fairness
THE COURT: Yes, and just to preserve the record I think it is a good idea.
MR. KREAMER: Right.
MR. REGISTER: Well, I still feel that either a civil or criminal person has a right to have a fair trial with a jury among his peers, Your Honor, and I totally disagree with Mr. Kreamer's ruling as relates to Dennis Thomas, excusing him because he was a former cement worker, and then retaining Mr. Kershaw. We feel that the only difference between them is Mr. Thomas is black and Mr. Kershaw is white.
As it relates to Reva Charlot or whatever her last name is, we totally disagree with Mr. Kreamer about they didn't get the right connection. She clearly stated that she could be fair and impartial, just like the other nonblack jurors basically did. And so we feel that that is not a neutral reason at all, Your Honor.
And as relates to Ms. Jordan, yes, she struggled back and forth, but that attempt of a challenge for cause that was made by Mr. Kreamer, it was very evidence that Ms. Jordan was trying to get out of jury duty. So we feel that his reason was not at all neutral.
And Ms. Taylor, even though she was somewhat interesting and going from *149 one extreme to the other, we feel that based upon the fact that
THE COURT: Well, Ms. Taylor was challenged for cause.
MR. REGISTER: Right, and I certainly object to that. No disrespect to the Court, but I certainly feel that she still should have served. But the bottom line, Your Honor, what you have is a total elimination of allunless I missed something, I don't think any black jurors are left. We would allege at this particular point that this is clearly not a jury of Mr. Alex's peers. And regardless of if it's civil or criminal, he still has a right to a jury among his peers. So we're simply going to object to the challenges made by opposing counsel. Thank you, Your Honor.
THE COURT: And your objection is noted. All right, you can bring in the jury.[9]
The court of appeal found "Rayne Concrete presented plausible, if not persuasive reasons for using its peremptory challenges against Thomas, who was previously employed in the concrete industry, and Jordan, who stated that she would be unable to concentrate during the trial due to concern for her children." However, as to prospective juror Charlot, the court of appeal found as follows:
We recognize that impressions drawn by the parties play an important part in their decision on whether to challenge a prospective juror. Further, we acknowledge that the trial court is in a far superior position to evaluate the prospective juror vis a vis a parties' challenge, together with impressions drawn from body language and demeanor. However, it seems that to allow a challenge of a protected class of prospective jurors based on an impression garnered from little or no questioning or other statements or argument made by counsel eviscerates the intent of the Batson/Edmonson rule. Accordingly, counsel's impressions which led to his peremptory challenge of Charlot, although arguably race-neutral, were not sufficient to meet the standard set by Batson/Edmonson. Thus, we find that the trial court committed legal error.
Alex v. Rayne Concrete Service, 915 So.2d at 937.
Against that factual and procedural background, we now address the limited question presented.
Initially, we note plaintiff's writ application asserts the court of appeal erred in finding Rayne Concrete presented plausible reasons for its peremptory challenges against prospective jurors Thomas and Jordan. In response to the Batson/Edmonson challenge raised to these two prospective jurors, Rayne Concrete articulated that Thomas had prior work experience in the concrete industry that may color his appreciation of the plaintiff's case and further stated Jordan's concern for her children made it difficult for her to concentrate on the case at hand. After reviewing the record, we agree with the court of appeal's finding Rayne Concrete properly exercised peremptory challenges as to these two prospective jurors and to this extent the trial court properly ruled on the plaintiff's Batson/Edmonson challenge.
*150 The thrust of Rayne Concrete's writ application and the real focus of our attention in this aspect of the case is the appellate court's holding with regard to prospective juror Charlot and its comments regarding Rayne Concrete's "gut feeling" about this juror. To better frame our discussion in the present case, it is important that we focus on the particular objection Rayne Concrete verbalized about its decision to peremptorily challenge Charlot and how plaintiff's counsel responded to that reasoning. The record shows defense counsel primarily relied upon a "gut feeling" that Charlot did not like him, but liked the plaintiff. The only elaboration he provided was that his "gut feeling" was generally based upon his observation of Charlot, but he did not include any particularization of his observations. In response, counsel for Alex pointed out to the trial court that Charlot clearly stated she could be fair and impartial, just like the other non-black jurors, and the voir dire transcript shows nothing to the contrary. Thus, it is in this factual setting we are called upon to determine whether the trial judge manifestly erred[10] in finding defense counsel's peremptory challenge to Charlot was not pretextual when judged in light of all evidence with a bearing on it. See Miller-El, 545 U.S. at 252, 125 S.Ct. at 2331.
The Equal Protection Clause of the United States Constitution prohibits engaging in purposeful discrimination on the grounds of race in the exercise of peremptory challenges. Batson, 476 U.S. at 89, 106 S.Ct. at 1719; State v. Snyder, 98-1078 (La.9/6/06), 942 So.2d 484.[11] As we recently explained in State v. Snyder, supra, the Supreme Court has redescribed the three-step Batson process which guides the courts' examination of peremptory challenges for constitutional infirmities, as follows:
A defendant's Batson challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge *151 on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a raceneutral explanation for striking the juror in question. Although the prosecutor must present a comprehensive reason, the second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. [Internal quotations and citations omitted.]
State v. Snyder, supra at 489 (citing Rice v. Collins, 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006)). The Court in Collins reversed a Court of Appeals' judgment that held the trial court had acted unreasonably by crediting the prosecutor's raceneutral reasons for striking an African-American panelist, finding that the Court of Appeals had improperly substituted its evaluation of the record for that of the state trial court. Collins, 126 S.Ct. at 973. The Court found the record did not demonstrate a reasonable fact finder must necessarily conclude the prosecutor lied about his reasons for striking the panelist. Id. at 975.
Further, as stated above, the Supreme Court in Miller-El expanded upon the type and quantum of evidence considered in Batson's third step. As we explained in State v. Snyder:
The Miller-El opinion begins by recognizing Batson's weakness is its "very emphasis on the particular reasons a prosecutor might give." Miller-El, 545 U.S. at 240, 125 S.Ct. at 2325. The Court continued, "Some stated reasons are false, and although some false reasons are shown up within the four corners of a given case, sometimes a court may not be sure unless it looks beyond the case at hand." Id. Miller-El, therefore, redirects attention to "Batson's explanation that a defendant may rely on `all relevant circumstances' to raise an inference of purposeful discrimination," Id., and to the trial judge's duty under Batson "to assess the plausibility" of the prosecutor's proffered reason for striking a potential juror "in light of all evidence with a bearing on it." (Emphasis supplied.) Id., 545 U.S. at 252, 125 S.Ct. at 2331.
State v. Snyder, supra at 490.
Our review of this state's jurisprudence reveals several instances where the courts have discussed "gut feelings" in the context of Batson. We stated in State v. Seals, "[i]n courts of our state, as well as in federal courts in this circuit, eye contact (or lack of it), body language, and other sense impressions appear to be recognized as important factors in decisions to exercise peremptory challenges." 05-0305 (La.11/25/96), 684 So.2d 368, cert. denied sub nom Seals v. Louisiana, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997). Although our opinion in Seals did not particularize the facts relative to the Batson challenge, the cases cited in support of our statement that the prosecutor's reasons for exercising his peremptory challenges were not racially motivated either involved eye contact (or the lack thereof) or that a particular juror was inattentive. Thus, even though Seals references sense impressions, it cannot be said our opinion specifically addressed that issue. The same can be said of our decision in State v. Elie, 05-1569 (La.7/10/06), 936 So.2d 791. Although in Elie we commented, *152 "the State's proffered reasons appeared race-neutral because they were ground in fact, rather than irrational or intuitive reasons," we did not have to address head-on the question of whether intuitive reasons, i.e., "gut feelings," were sufficient race neutral grounds for the exercise of a peremptory challenge. Id., 936 So.2d at 800. Thus, neither Seals nor Elie, though indicative of contrary viewpoints on the issue, may be said to express this Court's holding on the question of "gut feelings" in the context of Batson/Edmonson.[12]
Despite the res nova character of this issue in this Court, the jurisprudence shows that Louisiana's Second, Third, and Fourth Circuit Courts of Appeal have commented upon or addressed instances where "gut feelings" were relied upon to support the exercise of a peremptory challenge. In State v. Ford, 26,422 (La.App. 2 Cir. 9/21/94), 643 So.2d 293, a reverse Batson,[13] gender discrimination case (the defense peremptorily challenged all six white males on the jury venire),[14] the reviewing court stated:
As to the third juror, defense counsel offered that it had a "gut feeling, a discomfort," and the court found this was not a neutral explanation.
In Batson, a concurring justice stated that "`seat-of-the-pants instincts' may often be just another term for racial prejudice." 476 U.S. at 106, 106 S.Ct. at 1728 (Marshall, J., concurring). Federal courts have held that when the prosecutor states only that she has a "feeling" about the potential juror, this is not a legitimate explanation.[[15]] An Alabama court has specifically held that the prosecutor's "gut feeling" about a venire member is not a neutral explanation. Ex parte Bird, 594 So.2d 676, 684 (Ala. 1991). Given that defense counsel did *153 not attempt to offer any clear and reasonably specific reason for challenging Mr. Ferguson, the trial court was not plainly wrong to reject this challenge under the principles of Batson and McCollum, supra. The trial court, after all, has great discretion in accepting or rejecting the explanation of the party who used the peremptory challenge. Batson, 476 U.S. at 98, 106 S.Ct. at 1724 (fn.21); State v. Powell, 598 So.2d 454, 461 (La.App. 2d Cir.), writ denied 605 So.2d 1089 (1992).
State v. Ford, 643 So.2d at 298; (Federal appellate citations omitted). See also State v. White, 36,935 (La.App. 2 Cir. 6/6/03), 850 So.2d 751, 767, writ denied, 03-2616 (La.5/14/04), 872 So.2d 510 (finding, "[t]he comment that counsel has a `feeling' about a particular juror is not a sufficiently race-neutral explanation.").
The Third Circuit, citing State v. Ford, discussed "gut feelings" in State v. Miller, 95-857 (La.App. 3 Cir. 1/31/96), 670 So.2d 420, 425. In Miller, the appellate court upheld the trial court's denial of a Batson challenge presented in a gender discrimination setting. Although the trial and appellate courts upheld the State's peremptory challenge, finding characteristics other than gender justified the State challenge, both these courts commented that "gut feelings" about potential jurors is not a valid reason for excluding them. State v. Miller, 670 So.2d at 425.
Finally, in State v. Givens, 04-0765 (La. App. 4 Cir. 10/27/04), 888 So.2d 329, writ denied, 04-2919 (La.3/18/05), 896 So.2d 1003, cert. denied, ___ U.S. ____, 126 S.Ct. 154, 163 L.Ed.2d 154 (2005), the Fourth Circuit distinguished State v. Ford, 643 So.2d at 293. It found that although a subjective feeling, such as a "gut feeling," is not an adequate, neutral explanation for a strike, the State's explanation in the present case passed muster because it did not focus on the prosecutor's feelings, but rather on the potential jurors' equivocation on the amount of evidence they needed to convict an alleged offender of rape. State v. Givens, 888 So.2d at 337-38. Thus, the appellate court concluded it was not solely presented with trial counsel's "gut feeling."
After reviewing the appellate jurisprudence that has addressed "gut feeling" explanations, we agree that although "gut feelings" may factor into the decision to utilize a peremptory challenge, this reason, if taken alone, does not constitute a race-neutral explanation. We find such a reason as "gut feeling" is most ambiguous and inclusive of discriminatory feelings. Such an all inclusive reason falls far short of an articulable reason that enables the trial judge to assess the plausibility of the proffered reason for striking a potential juror. Whatever is causing the "gut feeling" should be explained for proper evaluation of the proffered reason. Batson made it clear the neutral explanation must be one which is clear, reasonably specific, legitimate and related to the particular case at bar. Id., 476 U.S. at 97-98, 106 S.Ct. at 1723. When thus proffered, a Batson/Edmonson evaluation can be made based upon Batson's complementary requirements. First, the party asserting the Batson/Edmonson challenge must be afforded a full and fair opportunity to demonstrate pretext in the explanation of the proponent of the peremptory strike. Secondly, for the trial judge to fulfill its duty under Batson/Edmonson "to assess the plausibility" of the proffered reason for striking a potential juror "in light of all evidence with a bearing on it," it is essential that the proponent of the peremptory strike fully articulate his reasons as best he can so that a proper assessment can be made. "Rubber stamp" approval of any non-racial explanation, no matter how whimsical or fanciful, would destroy Batson/Edmonson's *154 objective to ensure that no citizen is disqualified from jury service because of his race. State v. Collier, 553 So.2d at 821. "If trial courts were required to find any reason given not based on race satisfactory, only those who admitted point-blank that they excluded veniremen because of their race would be found in violation of the Fourteenth Amendment's guarantee of equal protection." Id.
It is only after the reasons for the use of a peremptory challenge have been presented which on their face are racially neutral, that an issue of fact is joined. Thereafter, the trial court must assess the weight and credibility of the explanation in order to determine whether there was purposeful discrimination in the use of the challenge. Miller-El, 545 U.S. at 239, 125 S.Ct. at 2325. In the present case, despite Alex's rebuttal of Rayne Concrete's professed "gut feeling," the trial court did not assess the weight and credibility of Rayne Concrete's "gut feelings" explanation. Rather, the trial court merely accepted the explanation because it was racially neutral on its face. Accordingly, we find the trial court failed to perform the third step of the Batson/Edmonson analysis and its ruling in favor of Rayne Concrete's peremptory challenge to Charlot was manifestly erroneous.
Notwithstanding this error, we find it is unnecessary to remand this case to the trial court for a hearing on this issue and for application of the correct standard. Even if the trial court had applied the correct standard, Rayne Concrete's sole reliance on its "gut feelings" was insufficient to rebut the prima facie showing of discrimination. Not only did Alex voice a challenge to Rayne Concrete's rejection of Charlot on a peremptory challenge, but he refuted Rayne Concrete's proposed race-neutral reason by articulating that the voir dire examination showed Charlot could be fair and impartial just like the other non-black jurors. Moreover, although there is no requirement that a litigant question a prospective juror during voir dire, the jurisprudence holds that the lack of questioning or mere cursory questioning before excluding a juror peremptorily is evidence that the explanation is a sham and a pretext for discrimination. Miller-El, 545 U.S. at 246, 125 S.Ct. at 2328, quoting Ex parte Travis, 776 So.2d 874, 881 (Ala.2000); State v. Collier, 553 So.2d at 823, n. 11, citing In re Branch, 526 So.2d 609 (Ala.1987). The purpose of voir dire examination is to develop the prospective juror's state of mind not only to enable the trial judge to determine actual bias, but to enable counsel to exercise his intuitive judgment concerning the prospective jurors' possible bias or prejudice. Trahan v. Odell Vinson Oil Field Contractors, Inc., 295 So.2d 224, 227 (La.App. 3 Cir.1974). It is evident in the context of Batson/Edmonson that trial and appellate courts should consider the quantity and quality of either party's examination of the challenged venire member and to view the use of this tool as a means for the judiciary to ferret out sham justifications for peremptory strikes. In the present case, the failure of Rayne Concrete to engage in any voir dire examination of Charlot, when coupled with its purely intuitive basis for her exclusion, is further evidence its explanation is a sham and a pretext for discrimination.
For the above reasons, we affirm the judgment of the court of appeal and hold the trial court was manifestly erroneous in granting a peremptory challenge against prospective juror Charlot.

ALLOCATION OF FAULT AND DAMAGES
In addition to urging reversal of the appellate court's Batson/Edmonson *155 ruling, Rayne Concrete contends the appellate court erred in failing to conduct a harmless error analysis to determine whether the exclusion of the juror was harmless, and in apportioning 80% fault to Rayne Concrete. We also granted and consolidated Alex's writ applications, which alleged the court of appeal erred in conducting a de novo review, in admitting certain medical records, in apportioning 20% fault to Alex, in its assessment of damages, and further in taxing 20% of the costs of the appeal to Alex. Alex v. Rayne Concrete Service, 05-2520 (La.5/5/06), 927 So.2d 299. Finding no merit to Rayne Concrete's harmless error assertion, but finding a principled basis for Alex's request for a remand for a new trial, we pretermit discussion of the other remaining issues raised.
The threshold issue is Rayne Concrete's assertion that even if the trial court erred in allowing it to exercise a peremptory challenge with regard to Charlot, such error was harmless. We disagree. Errors regarding discrimination in the composition of the grand jury or petit jury are not harmless. Cf. Vasquez v. Hillery, 474 U.S. 254, 263-64, 106 S.Ct. 617, 623, 88 L.Ed.2d 598 (1986) (holding that racial discrimination in petit jury selection is a structural error not subject to harmless error analysis); State v. Carmouche, XXXX-XXXX (La.5/14/02), 872 So.2d 1020, 1049.
Next, we must consider whether the appellate court properly chose to conduct a de novo review instead of remanding this case to the trial court for a new trial. At the heart of its decision not to remand, the appellate court recognized this was the third jury trial of this matter and further considered the loss of judicial time and assets in the past and possibly in the future. For that reason and because the record of the trial before it was complete, it conducted a de novo review and rendered a decision accordingly. Alex v. Rayne Concrete Service, 915 So.2d at 937.
LA.CODE CIV. PROC. ANN. art. 2164 provides that an "appellate court shall render any judgment which is just, legal and proper upon the record on appeal." It is well settled that an appellate court is empowered under this article to remand a case to the district court for the taking of additional evidence where it is necessary to reach a just decision and to prevent a miscarriage of justice. Vallo v. Gayle Oil Company, Inc., 94-1238 (La.11/30/94), 646 So.2d 859, 866. Although a court should always remand a case whenever the nature and extent of the proceedings dictate such a course, whether or not any particular case should be remanded is a matter which is vested largely within the court's discretion and depends upon the circumstances of the case. Jones v. LeDay, 373 So.2d 787, 789 (La.App. 3 Cir.1979).
As noted above, racial discrimination in petit jury selection is a structural error. Vasquez, 474 U.S. at 263-64, 106 S.Ct. at 623. Moreover, in addition to its overhaul of the manner in which courts treated and analyzed the exercise of peremptory challenges, Batson, as extended by its progeny, made the following fundamental observations that impact our decision regarding the propriety of the appellate court's choice not to remand this matter for a new trial: (1) Discrimination in selection of jurors harms not only the accused whose life or liberty interest they are summoned to try; (2) By denying a person participation in jury service on account of his race or gender, the state unconstitutionally discriminates against the excluded juror; (3) The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community; and (4) Selection *156 procedures that purposefully exclude persons from juries for reasons of race or gender undermine public confidence in the fairness of our system of justice. Batson, 476 U.S. at 88, 106 S.Ct. 1712; Edmonson, 500 U.S. at 629, 111 S.Ct. 2077; J.E.B., 511 U.S. at 140, 114 S.Ct. 1419.
In the present case, it cannot be gainsaid that this matter has been tried to three separate juries and that because of that procedural history, under most circumstances it may have been appropriate for the appellate court to conduct a de novo review. See, e.g., Gonzales v. Xerox Corp., 254 La. 182, 320 So.2d 163 (1975). However, in light of the structural error involved, the impact on the excluded juror, and the harm to our system of justice, consideration of judicial economy must yield to the greater legal principles involved. See Masse-Richardson v. Samudia, 05-987 (La.App. 3 Cir. 3/15/06), 925 So.2d 722. Accordingly, we find the appellate court erred when it conducted a de novo review of the record. We reverse and set aside that part of the appellate court decision that examined the evidence anew, reallocated fault, and reassessed damages and court costs. Therefore, this matter is remanded to the trial court for a new trial.

CONCLUSION
A party in a civil case may seek review of a trial court judgment on a Batson/Edmonson ruling by supervisory writ under LA.CODE CIV. PROC. ANN. art. 2201 or on appeal after a final judgment in the case is rendered under LA.CODE CIV. PROC. ANN. art. 2083. In this case, the court of appeal was correct to consider the Batson/Edmonson ruling on appeal and in its ultimate conclusion that the reasons set forth by Rayne Concrete in support of the peremptory challenge against prospective jurors Thomas and Jordan were sufficient. However, Rayne Concrete's reasons were not sufficient as to Charlot to meet the standard set by Batson/Edmonson. Because the trial court was manifestly erroneous in finding Alex did not carry his burden of proving purposeful discrimination as to juror Charlot, the court of appeal erred in conducting a de novo review of the record and in rendering judgment. Instead, we must remand this matter so the trial court can conduct a new trial.

DECREE
For the reasons stated herein, the judgment of the court of appeal is affirmed, in part, reversed in part, and the case is remanded to the trial court for a new trial.
AFFIRMED IN PART; REVERSED IN PART; REMANDED TO TRIAL COURT.
CALOGERO, Chief Justice, concurs in the result and assigns reasons.
JOHNSON, Justice, concurs in part, dissents in part and assigns reasons.
VICTORY, Justice, dissents in part and assigns reasons.
TRAYLOR, Justice, concurs in part and dissents in part and assigns reasons.
WEIMER, Justice, concurs in part and dissents in part and assigns reasons.
CALOGERO, Chief Justice, Concurs in the Result and Assigns Reasons.
I concur in the result. My preference would be to apply this court's decision in Gonzales v. Xerox Corp., 254 La. 182, 320 So.2d 163 (1975), and have this court perform a de novo review and render judgment on the evidence after reversing the district court's rejection of the defendant's Batson/Edmonson challenge, as the court of appeal did in this case. In light of the *157 factual differences between the two cases, I am not convinced that the United States Supreme Court's decision in Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), necessarily requires that this court remand this civil case for new trial simply because the district court improperly rejected defendant's Batson/Edmonson challenge relative to potential members of the jury. The Vasquez case involved a criminal indictment issued by a grand jury from which African-Americans had been unlawfully excluded. That being the case, the majority's reliance on Vasquez is misplaced, since the structural error versus trial error dichotomy is more traditionally applied in criminal cases.
Thus, under ordinary circumstances, I would dissent from the portion of the majority opinion remanding this case to the district court for new trial before a properly-constituted jury. However, this case involves a close division among the justices, with three who would reverse and remand for a new trial, and three who would find that the district court properly rejected defendant's Batson/Edmonson challenge and reinstate the district court judgment. Because I agree that the district court erred when it rejected defendant's Batson/Edmonson challenge, I am concurring in the decision of the justices who would remand for a new trial, rather than joining the dissenters who wish to reinstate the district court judgment.[1] In order to allow the case to move forward, I take this position rather than persist in my view that we should simply perform a de novo review and render judgment on the evidence. I prefer ordering a new trial (although that is inconsistent with Gonzales v. Xerox Corp.), to reinstating the district court judgment because that judgment is based on a verdict from a jury from which all African-Americans were systematically excluded.
JOHNSON, Justice, concurs in part, dissents in part, and assigns reasons.
I concur in the majority's conclusion that a party to a civil suit is not required to seek review of his Batson/Edmonson[1] challenge by supervisory writ application, but may seek review of his challenge by appeal after the conclusion of the trial. Additionally, I agree with the majority's conclusion that the trial court failed to determine whether counsel for defendant, Rayne Concrete, presented reasons that were sufficiently race neutral reasons for the exercise of a peremptory challenge against prospective juror Reva Mae Charlot. The court did not assess the weight or credibility of the intuitive reasons(gut feelings), but simply accepted the explanation as race-neutral on its face.
I must dissent however, on the issue whether defendant presented race neutral reasons for striking the remaining three prospective jurors who were African Americans, since the members of the resulting all white jury expressed concerns during voir dire that were similar to those expressed by the jurors who were struck.
Racial discrimination has no place in the courtroom, whether the proceeding is civil or criminal. We must be mindful to carry out the charge articulated by the *158 United States Supreme Court in Edmonson, where the Court stated:
Race discrimination within the courtroom raises serious questions as to the fairness of the proceedings conducted there. Racial bias mars the integrity of the judicial system and prevents the idea of democratic government from becoming a reality (Citations omitted)
Racial discrimination in the jury selection process offends the Equal Protection Clause of the Fourteenth Amendment and a pattern of strikes against African American jurors still gives rise to an inference of discrimination. Once the mover raises an inference of discrimination, the opposition then has the burden of articulating a raceneutral explanation for striking African American jurors. The trial judge must serve as the gatekeeper, ensuring that racial prejudice, which impedes the securing of equal justice, does not invade our judicial system. When the trial judge, as a gatekeeper, enforces a discriminatory peremptory challenge, the court itself becomes a party to racism, and has elected to use its power and prestige to enforce discrimination. As the gatekeeper, the trial judge must decide whether the respondent has articulated a genuine concern, or whether the reason articulated is merely a guise to accomplish his/her discriminatory purpose. Verbalized facially neutral reasons are often merely a pretext for conscious or unconscious racism. It is clear from the result in this case that our Louisiana courts have failed to following the rule set out in Edmonson, fifteen years ago.
In Edmonson, the Court held that a private litigant in a civil case may not use peremptory challenges to exclude jurors on account of their race, since race-based exclusion violates the equal protection rights of the challenged jurors. Private parties become state actors when they exercise peremptory challenges since peremptory challenges have no utility outside the jury system, and the system of jury service is administered by the courts. In Edmonson, Thaddeus Donald Edmonson, a construction worker, was injured in a jobsite accident at Fort Polk, Louisiana, a federal enclave. Edmonson sued Leesville Concrete Company for negligence in the United States District Court for the Western District of Louisiana, claiming that a Leesville employee permitted one of the company's trucks to roll backward and pin him against some construction equipment. Edmonson invoked his Seventh Amendment right to a trial by jury.
During voir dire, Leesville used two of its three peremptory challenges authorized by statute to remove black persons from the prospective jury citing Batson v. Kentucky, supra., Edmonson, who is himself black, requested that the District Court require Leesville to articulate a race-neutral explanation for striking the two jurors. The District Court denied the request on the ground that Batson does not apply in civil proceedings. As empaneled, the jury included 11 white persons and 1 black person. The jury rendered a verdict for Edmonson, assessing his total damages at $90,000. It also attributed 80% of the fault to Edmonson's contributory negligence, however, and awarded him the sum of $18,000.
Edmonson appealed, and a divided panel of the Court of Appeals for the Fifth Circuit reversed the decision, the court held that:
our opinion in Batson applies to a private attorney representing a private litigant and that peremptory challenges may not be used in a civil trial for the purpose of excluding jurors on the basis of race. 860 F.2d 1308 (1989). The Court of Appeals panel held that private parties become state actors *159 when they exercise peremptory challenges and that to limit Batson to criminal cases "would betray Batson's fundamental principle [that] the state's use, toleration, and approval of peremptory challenges based on race violates the equal protection clause." Id., at 1314. The panel remanded to the trial court to consider whether Edmonson had established a prima facie case of racial discrimination under Batson. (Emphasis Added).
The full court then ordered rehearing en banc. A divided en banc panel affirmed the judgment of the District Court, held that a private litigant in a civil case can exercise peremptory challenges without accountability for alleged racial classifications. 895 F.2d 218 (1990). The court concluded that the use of peremptories by private litigants does not constitute state action and, as a result, does not implicate constitutional guarantees. The dissent reiterated the arguments of the vacated panel opinion.
In Edmonson, the Supreme Court noted the following:
we note that the injury caused by the discrimination is made more severe because the government permits it to occur within the courthouse itself. Few places are a more real expression of the constitutional authority of the government than a courtroom, where the law itself unfolds. Within the courtroom, the government invokes its laws to determine the rights of those who stand before it. In full view of the public, litigants press their cases, witnesses give testimony, juries render verdicts, and judges act with the utmost care to ensure that justice is done. Rose v. Mitchell, 443 U.S. 545, 556, 99 S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1979); Smith v. Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84 (1940). In the many times we have addressed the problem of racial bias in our system of justice, we have not "questioned the premise that racial discrimination in the qualification or selection of jurors offends the dignity of persons and the integrity of the courts." Powers [v. Ohio], 499 U.S., [400] at 402, 111 S.Ct., [1364] at 1366 [113 L.Ed.2d 411 (1991)]. To permit racial exclusion in this official forum compounds the racial insult inherent in judging a citizen by the color of his or her skin. (Emphasis added)
The difficulty for trial courts has always been separating out reasons that are legitimate, from those that are merely pre-textual. Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), suggests some tools to use in determining whether the proffered race neutral reasons are pre-textual. First, we should look at the number of minorities excluded. In Miller-El, out of twenty(20) black members included in the one-hundred and eight (108) person venire panel, only one (1)actually served as a juror.
Secondly, Miller-El suggests we must do a side-by-side comparison of the black jurors who were struck and the white jurors who were allowed to serve. Any patterns of disparate treatment or questioning would lead to the conclusion that the questioning was intended to exclude black venire members, despite any race neutral reasons proffered to the contrary. The trial court's job is to determine whether the reasons are credible, or even plausible.
Next, Miller-El suggests that we go beyond the comparisons to look at broader patterns of discriminatory practices during the jury selection process.
In Rice v. Collins, 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824(2006), the Supreme Court set forth a three step inquiry as follows:

*160 A defendant's Batson challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. 476 U.S., at 96-97, 106 S.Ct. 1712. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Id., at 97-98, 106 S.Ct. 1712. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Purkett v. Elem, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam). Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. Batson, supra, at 98, 106 S.Ct. 1712; Miller-El v. Dretke, supra. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett, supra, at 768, 115 S.Ct. 1769.
Here, at the beginning of the jury selection process, Four African Americans were selected as part of the voir dire panel: Dennis Thomas, Reva Mae Charlot, Mary Taylor, and Natalie Jordon.[2] After the panel had been questioned, Taylor was challenged for cause by the defendant because he previously was employed in the concrete industry. Rayne Concrete then used its peremptory challenges to excuse the three remaining African American jurors. After all the challenges had been exercised, Plaintiff's counsel made his Batson challenge by objecting to Rayne Concrete's exclusion of the three jurors based on race. Plaintiff's counsel argued that Alex, who is African American, has the right to a fair trial by a jury of his peers and that the exclusion of all prospective African American jurors and the resulting all white jury deprived him of that right.
Before the trial court determined whether Alex had made a prima facie showing of discrimination, counsel for Rayne Concrete voiced its race-neutral explanations for striking the subject jurors. Thus, the first step of the three-part step was rendered moot. Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). The appellate court stated that Mary Taylor was challenged for cause and found no abuse of the trial court's discretion. Counsel for Rayne Concrete offered the following explanations for striking the three remaining black jurors:
MR. KREAMER (DEFENSE COUNSEL):

Mr. Thomas indicated that he worked in the concrete business for fifteen years and had not been trained, very similar to Mr. Alex. We don't want his particular history. We're afraid that anything that he might think about what Mr. Alex went through being what the standard is in the industry, and he might not listen to what is going to (sic) on; as opposed to the other guy, Mr. Kershaw, who was also in the industry. He was trained, and he knows the standards that are going to be consistent with the particular rules that are going to be testified to *161 by Dennis Howard, the concrete liability expert.
MR. KREAMER (DEFENSE COUNSEL):

Ms. Charlot: She and I just didn't get revised.[3] I was looking at her, and she just looked like she didn't like me, and I think she liked Mr. Alex. And that's just based on my personal observations, and that was just kind of a gut feeling. (Emphasis added).
MR. KREAMER (DEFENSE COUNSEL):

Ms. Jordan: There were many reasons. We thought she was very close to being a challenge for cause, and we did make a for cause challenge against her. She obviously wasn't going to be able to focus on the evidence. And she also answered some of my general questions in ways which I think would make her more favorable to the plaintiff than the defendant.
Counsel for Alex made the following argument to the trial court regarding the race-neutral explanation offered by Counsel for Rayne Concrete:
MR. REGISTER(PLAINTIFF COUNSEL):
........ I totally disagree with Mr. Kreamer's ruling as it relates to Dennis Thomas, excusing him because he was a former cement worker, and then retaining Mr. Kershaw. We feel that the only difference between them is Mr. Thomas is Black and Mr. Kershaw is White.

As it relates to Reva Charlot ......, we totally disagree with Mr. Kreamer about they didn't get the right connection. She clearly stated that she could be fair and impartial, just like the other non-black jurors basically did. And so we feel that is not race neutral reasons at all, Your Honor.

As it relates to Ms. Jordan, yes, she struggled back and forth, but that attempt of a challenge for cause that was made by Mr. Kreamer, it was very evidence that Ms. Jordan was trying to get out of jury duty. So we feel that his reasons was not at all neutral.

As it relate to Ms. Taylor, even though she was somewhat interesting and going from one extreme to the other, we feel that based upon that
...... I certainly feel that she could have served. But the bottom line, Your Honor, what you have is a total elimination of all  unless I missed something, I don't think any Black jurors are left. We would allege at this particular point that this is clearly not a jury of Mr. Alex's peers. (Emphasis Added).
The lower courts concluded that Rayne Concrete presented race neutral reasons for using its peremptory challenges. In my mind, the reason given were entirely pretextual. The reason given for excusing Mr. Thomas, a African-American male, was that he previously worked in the concrete industry. Mr. Alfred Kershaw, a Caucasian male juror, who also worked previously in the concrete industry was allowed to serve. The only difference between these two jurors was race.
Counsel for Rayne Concrete stated that he excused Mrs. Jordan, because he felt that she would be unable to concentrate during the trial due to concern for her children. However several white jurors, with children, were allowed to serve. Defense counsel did not excuse Mrs. Audrey Rose, who stated that she was the primary care-giver for her eighty-six year old *162 mother, severe diabetic, and who expressed concern over having to hire a sitter if selected to serve on the jury. Mr. Ronald Prejean, a Caucasian male juror, stated that "it would be difficult for him to focus and that he would prefer to be at work rather than serve as a juror". The only difference between these jurors was race.
Plaintiff is entitled to a remand of this matter and a new trial by a jury of his peers. Racial bias mars the integrity of the judicial systems, offends the dignity of persons, and the integrity of the courts Edmonson, supra.
VICTORY, J., dissenting in part.
I agree with the portion of the majority opinion which holds that a Batson/Edmonson challenge may be considered on appeal following the conclusion of the trial or on supervisory writ application. However, I dissent from the portion of the majority opinion which holds that the trial judge committed manifest error in granting the peremptory challenge of prospective juror Reva Mae Charlot. Because I believe the trial court committed no error in that regard, I would remand this matter to the court of appeal to consider plaintiff's remaining assignments of error under the manifest error standard of review.[1]
A reviewing court owes the district judge's evaluations of credibility of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)(per curiam); State v. Robinson, 02-1869 (La.4/14/04), 874 So.2d 66, 84, cert. denied, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004). This is a factual, not a legal error, and is accorded great deference on appeal. State v. Collier, 553 So.2d 815 (La.1989).
As we stated in State v. Seals, "[i]n courts of our state, as well as in federal courts in this circuit, eye contact (or lack of it), body language, and other sense impressions appear to be recognized as important factors in decisions to exercise peremptory challenges." 05-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997). The trial judge observed the voir dire questioning of Ms. Charlot and thus was in the best, and only, position to discern the truthfulness of defense's explanation for challenging her.
According to the Third Circuit, defense counsel could not have had a race-neutral reason for exercising his peremptory challenge because he did not question her directly. However, the law does not require that counsel question a prospective juror individually before exercising a peremptory challenge against that juror. Defense counsel and the trial judge had ample opportunity to observe Ms. Charlot's demeanor as the entire panel, including Ms. Charlot, was questioned at length by defense counsel, plaintiff's counsel, and the trial judge. The trial judge also observed Ms. Charlot's somewhat over-eager response *163 to plaintiff's questioning regarding whether she was willing to serve.
In this case, defense counsel presented a race-neutral reason for striking Ms. Charlot and the plaintiff had the burden of proving purposeful discrimination. Although plaintiff argues that the fact that all four African-American panelists were ultimately were excluded from jury service proves purposeful discrimination, the record proves otherwise. Prospective juror Taylor was struck for cause by the trial judge, which leaves only prospective jurors Thomas and Jordan. As found by the court of appeal, a peremptory challenge against Thomas was justified because he was a former concrete worker with no formal training whom defendants felt would be unaware of the proper workplace safety standards. In addition, as also found by the court of appeal, Jordan was clearly unwilling and unable to serve as she expressed that she would be unable to concentrate due to her family obligations.
Thus, in my view, it cannot be inferred by these other challenges that plaintiff carried his burden of proving that defendants purposefully discriminated against Ms. Charlot. Considering all the relevant circumstances, there is nothing that indicates that the reasons offered by defense counsel were pretextual or implausible.
For the above reasons, I respectfully dissent in part.
TRAYLOR, Justice, concurring in part, dissenting in part.
I agree with the majority opinion holding that a Batson/Edmonson challenge may be considered on appeal following the conclusion of the trial or on supervisory writ application. I further agree with the majority opinion in its finding that prospective jurors Thomas and Jordan were properly excused by peremptory challenges.
However, I dissent from the portion of the majority opinion which holds that the trial judge committed manifest error in granting the peremptory challenge of prospective juror Reva Mae Charlot for the reasons expressed in dissent by Justice Victory. In addition, I write separately to express my disagreement with the majority opinion's conclusion that a "gut feeling" can never be the basis for a race neutral peremptory challenge.
It is astonishing that the majority believes that the determination can be made that the trial judge erred in granting the peremptory challenge of Ms. Charlot on the basis of a cold record, much less make blanket pronouncements about a basis for a peremptory challenge. That this court, reading a cold record, without having the ability to know the subtle variables and impressions of voir dire of which the trial judge was aware, still finds the trial judge erred, flies in the face of our long-established practice of relying upon the trial judge's great discretion in his or her assessment of whether discriminatory intent was present in voir dire questioning. To make a blanket pronouncement that "a gut feeling" can never be a race-neutral basis for a peremptory challenge does away with the very reason for peremptory challenges, which arise in an intensely circumstance-specific context. In making a blanket pronouncement, it does not matter what anyone saw, heard or felt. If we adhere to the majority's reasoning, the reason for peremptory challenges will be extinguished. Because I continue to rely on the vast discretion of the trial judge in making the determination whether racially discriminatory intent was present in the voir dire questioning, I cannot agree with the majority's blanket pronouncement.
Like Justice Victory, I believe that no error was committed by the trial court in *164 its granting of the peremptory challenge of Ms. Charlot. Therefore, I would remand the matter to the court of appeal to consider the plaintiff's remaining assignments of error under the manifest error standard of review.
WEIMER, J., concurs in part, dissents in part.
I concur in the holding that a Batson/Edmonson challenge in a civil case may be taken to the appellate court by supervisory writ or by appeal.
On the merits of the peremptory challenge, I would not find a violation of Batson/Edmonson.
The trial court must determine if a peremptory challenge is pretextual. It is especially beneficial for the trial court to articulate findings when ruling on peremptory challenges.
The defendant articulated a reason the trial court accepted based on the record. Counsel for the defendant said the potential juror, Ms. Charlot, did not like him, but liked counsel for the plaintiff. Counsel for the plaintiff disputed this and the trial court made a determination accepting the explanation of counsel for defendant. Attorney for the defendant expressed more than a mere "gut feeling" for exercising the challenge; he indicated the potential juror demonstrated a fondness for the plaintiff's attorney over him. On the basis of a cold transcript which does not reflect gestures or tone or inflection or body language or facial expressions, I cannot say the trial court was manifestly erroneous. We are not in a position to evaluate whether the explanation of defense counsel was pretextual given the cold transcript before us.
There is support in the transcript for the concern expressed by defense counsel. Indeed, the plaintiff's attorney commented favorably on the attitude demonstrated by Ms. Charlot in response to a question he posed. See Alex v. Rayne Concrete Service, Nos. 05-1457 c/w 05-2344 c/w 05-2520, op. at ____. The transcript does not necessarily depict the enthusiasm for serving as a juror referenced by the plaintiff's attorney.
In the context of a criminal case, which principles are equally applicable here, we stated:
The trial court plays a unique role in the dynamics of a voir dire, for it is the court that observes firsthand the demeanor of the attorneys and venire persons, the nuances of questions asked, the racial composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold transcript. As a result, the trial court's evaluation of discriminatory intent is entitled to great deference by reviewing courts. [Citations omitted.]
State v. Juniors, 03-2425, p. 32 (La.6/29/05), 915 So.2d 291, 319.
Equally applicable are the following principles:
The race-neutral explanation need not be persuasive or even plausible. It will be deemed race-neutral unless a discriminatory intent is inherent in the explanation. The ultimate burden of persuasion as to racial motivation rests with, and never shifts from, the opponent of the peremptory challenge. The trial court's findings with regard to a Batson challenge are entitled to great deference on appeal. When a defendant voices a Batson objection to the . . . exercise of a peremptory challenge, the finding of the absence of discriminatory intent depends upon whether the trial court finds the . . . race-neutral explanations to be credible. "Credibility can be measured by, among other factors, the . . . demeanor; by how reasonable, or *165 how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy."
. . . .

Collins illustrates the difficulties courts face in attempting to review a trial court's resolution of a Batson challenge. In that case, a Batson challenge was made after the prosecution struck a young, African-American female panelist, and the challenge was rejected by the state courts and the federal district court. However, when defendant sought collateral habeas corpus relief in the federal courts, the Ninth Circuit Court of Appeals reversed on grounds that the trial court had acted unreasonably by crediting the prosecutor's race-neutral reasons for striking the juror.
The Supreme Court reversed, finding the Court of Appeals had "improperly substituted its evaluation of the record for that of the state trial court." The Court found the record did not demonstrate that a reasonable factfinder must necessarily conclude the prosecutor lied about his reasons for striking the panelist.
Thus, the most recent admonition by the Supreme Court on jury selection . . . focuses, not on a reviewing court's stringent parsing of a prosecutor's race-neutral reasons to ferret out pretext masking discriminatory intent, but on the leeway a reviewing court must grant a trial court in its evaluation of the credibility of the prosecutor in the third step of the Batson analysis. [Citations and footnote omitted.]
State v. Snyder, 98-1078 (La.9/6/06), 942 So.2d 484, 489-492.
NOTES
[1] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).
[2] The Louisiana Workers' Compensation Corporation intervened seeking to recover indemnity and medical benefits paid to Alex as a result of this work-related injury.
[3] The trial court found the jury's assessment of fault contrary to the law and the evidence.
[4] At oral argument, plaintiff's counsel explained his objective was a new trial in a different venue.
[5] As Article 2201 does not provide standards or criteria for an attorney's applying for or a court's granting or denying such applications, the jurisprudence is the primary source of guidance in the preparation and handling of "supervisory writs." MARAIST AND LEMMON, § 14.3 at 116. These commentators have outlined the guidelines used by appellate courts in granting or denying supervisory writ applications:

Generally, a court of appeal will initially consider whether the ruling complained of may, as a practical matter, be corrected on appeal. If so, the ruling does not cause irreparable injury, and the application usually will be denied on that basis, without extensive consideration of the merits of the application. But if the ruling cannot as a practical matter be corrected on appeal, the court usually will proceed to consider and determine the merits of the application, and if the ruling was correct, the application will be denied on the merits. But if the ruling was incorrect, the court can grant the application and, within the discretion of the court, either summarily reverse or modify the ruling or set the matter down for oral argument and an opinion.
In addition to the existence of irreparable injury as a grounds for full consideration of an application for supervisory writs, there is a jurisprudentially adopted second set of grounds for a court of appeal to determine the merits of the application and to grant or deny on the merits. The Supreme Court has jurisprudentially established guidelines for an appellate court's consideration of supervisory writs on the merits, despite the fact that the error can be corrected on appeal, in certain situations where judicial efficiency and fundamental fairness dictate such action.
The Supreme Court has instructed the appellate courts to exercise supervisory jurisdiction when (1) an appellate reversal will "terminate the litigation," (2) there is no dispute of fact to be resolved, and (3) the trial court decision is "arguable incorrect." Herlitz Constr. Co. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981). Although these guidelines were formulated in the context of the exercise of supervisory jurisdiction to consider the merits of a ruling denying an exception of no cause of action, the Supreme Court's test should apply to an intermediate court's review of any interlocutory ruling. See, e.g., Chambers v. LeBlanc, 598 So.2d 337 (La.1992) (review of a lower court judgment overruling exception of venue); Badon v. Koppenol, 424 So.2d 1237 (La.App. 1 Cir.1982) (review of a trial court judgment denying a motion for summary judgment).
Id., § 14.7, p. 404 (1999) and p. 116 (2006 Pocket Part).
[6] "In the interests of judicial efficiency and fairness to the parties, an appellate court in its discretion may review an interlocutory or final judgment pursuant to its supervisory jurisdiction, even though the judgment also could be reviewed pursuant to an appeal." Uniform Rules of the Courts of Appeal, Rule 4-3, Revision Comment.

Further, when the court of appeal grants an application for supervisory writs and renders judgment, either peremptorily or after briefing and oral argument, the decision of the court of appeal will be the "law of the case" in subsequent proceedings in that matter. MARAIST AND LEMMON, § 14.17, p. 405 (1999); Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105, 107 (1971). However, a denial by the court of appeal of an application for supervisory writs does not prevent the appellate court from reconsidering the matter on appeal after trial on the merits. Id.
[7] The transcript quotes defense counsel saying, "She [Ms. Charlot] and I just didn't get revised." In brief, defense counsel contends his words were transcribed inaccurately, and what was really said was "She and I just didn't get good vibes." Counsel for plaintiff has not disagreed with defense counsel's suggestion.
[8] Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), recognized Batson was applicable in civil cases. Although in the present case, the trial court expressed the erroneous view Batson was inapplicable in civil cases, he nevertheless allowed the parties to make a record and ruled on the issue for subsequent appellate review.
[9] We note that although there was a colloquy between the trial court and counsel for the respective parties on the interjected Batson/Edmonson challenge, the record is void of a formal pronouncement of the trial court, denying the challenge. Where a trial court's ruling is silent with respect to any demand which was at issue, such silence constitutes an absolute rejection of such demand. VaSalle v. Wal-Mart Stores, Inc., XXXX-XXXX (La.11/28/01), 801 So.2d 331, 337.
[10] From the outset, we note the appellate court erroneously stated the trial court committed legal error when it denied the Batson/Edmonson objection as to Charlot. Because a trial judge's findings pertaining to purposeful discrimination turn largely on credibility evaluations, such findings should be entitled to great deference by a reviewing court. State v. Collier, 553 So.2d 815, 818 (La.1989). Accordingly, this Court has held that a trial court's rulings regarding discriminatory jury selection are entitled to great deference and will not be overturned absent a finding of manifest error. State v. Elie, 05-1569 (La.7/10/06), 936 So.2d 791.
[11] Louisiana criminal law codifies the Batson ruling in LA.CODE CRIM. PROC. ANN. art. 795(C), which provides:

No peremptory challenge made by the state or the defendant shall be based solely on the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objection party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
There is no like provision in our Code of Civil Procedure. Batson was made applicable to civil trials in Edmonson, supra. As Batson itself is applicable, so are the later United States Supreme Court cases interpreting Batson. See Miller-El v. Dretke, supra; Rice v. Collins, 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006). Because Edmonson made Batson applicable to civil trials, we find it appropriate to not only rely upon later Supreme Court jurisprudence, but also to apply the Batson analysis codified in LA.CODE CRIM. PROC. ANN. art. 795(C) in the civil trial setting.
[12] Our research further shows that in State v. Collier, 553 So.2d 815, we commented on the duty to come forward with a neutral explanation for challenging a juror. Speaking in generalities, we stated, "This explanation may be something less than justification of a challenge for cause, but must be something more than the prosecutor's assumption or intuition that the juror will be partial to the defendant because of their shared race." Id., 553 So.2d at 820. As in Seals and Elie, although the Collier court spoke of assumptive or intuitive explanations, it was not directly faced with such an explanation. Thus, those comments, too, were obiter dictum.
[13] The requirements of Batson/Edmonson apply equally to defendants, and the State is equally permitted to challenge a defendant's unconstitutional exercise of peremptory challenges. Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).
[14] See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (holding that "gender, like race, is an unconstitutional proxy for juror competence and impartiality").
[15] See United States v. Horsley, 864 F.2d 1543, 1546 (11th Cir.1989) (holding that an attorney's unsupported intuitive feeling is an insufficient race-neutral reason for a peremptory strike); Brown v. Kelly, 973 F.2d 116, 121 (2d Cir.1992) (quoting statement from Horsley that mere feeling is not sufficient race-neutral explanation), cert. denied, 506 U.S. 1084, 113 S.Ct. 1060, 122 L.Ed.2d 366 (1993); United States v. Casper, 956 F.2d 416, 418 (3d Cir.1992)(quoting same statement from Horsley). But see United States v. Bentley-Smith, 2 F.3d 1368, 1375 (5th Cir.1993), stating:

An attorney who claims that he or she struck a potential juror because of intuition alone, without articulating a specific factual basis such as occupation, family background, or even eye contact or attentiveness, is more vulnerable to the inference that the reason proffered is a proxy for race. That is not to say, however, that the reason should be rejected out of hand; that is a call for the judge to make, based upon his or her evaluation of such things as the demeanor of counsel, the reasonableness of the justifications given, and even the court's personal observation of the venireman.
[1] The district court apportioned fault 45% to Alex, 50% to Rayne Concrete, and 5% to LCS. The jury further awarded Alex $40,000 in general damages, $13,000 in past medical expenses, $13,000 in future medical expenses, $10,000 in past lost wages, and nothing for future lost wages.
[1] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69(1986); Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).
[2] Thirty-two prospective jurors were selected and were administered the oath by the clerk The trial court questioned the prospective jurors as to the their name, employment, martial status and number of children. Three of the original thirty-two prospective jurors were excused by the trial court, namely Joseph Morgan, unable to read; Curly Meche, unable to read, and Amy Russel, medical reason.
[3] Counsel for Rayne Concrete avers that the words "get revised" were transcribed inaccurately, and what was really said was "She and I just didn't get good vibes."
[1] The remaining assignments of error presented to the court of appeal were: (1) that the trial court erred in allowing into evidence the June 8, 2000 medical records from Our Lady of Lourdes Hospital Emergency Room; (2) that the trial court erred in finding plaintiff to be 45% comparatively at fault in causing his injury; (3) that the trial court erred in its award of damages, both general and special; and (4) that the trial court erred in its assessment of court costs. As to the first assignment of error, as the court of appeal found that even under the de novo standard of review, the trial court's ruling allowing the medical records into evidence was correct, it is necessarily also correct under the manifest error standard. Therefore, the court of appeal would not have to consider this assignment of error again.